STATE *ex rel.* LACY D. HEAVENER, *et al.*

*v.*

ROBERT M. PERRY, *et al., and* THE COUNTY
COURT OF MONROE COUNTY, WEST VIRGINIA

(No. 13117)

Submitted September 28, 1971.  Decided November 2, 1971.

*Lynch, Mann & Knapp, Norman Knapp,* for relators.

*Haynes & Ford, Charles M. Lobban,* for respondents.

HAYMOND, JUDGE:

In this original mandamus proceeding instituted July 28, 1971, on a second petition designated Petition for Rehearing but which is in fact a new or second petition, the petitioners, Lacy D. Heavener, Vernon L. Atkins and W. A. Skaggs, citizens, voters and taxpayers of Monroe County, West Virginia, seek a writ to compel the defendants Robert M. Perry, Garnett C. Shanklin, Jr., and Randall Wallace, Commissioners, and The County Court of Monroe County, West Virginia, as the board of canvassers of that county, to reconvene and upon a recount to reject and exclude from the tally of each voting precinct all absentee ballots voted at a special school board levy election held in that county March 18, 1969, including precincts Nos. 13 and 18; to compel the defendants to hear and consider extrinsic evidence and to compel the defendants to adopt reasonable procedure for determining the order and results of a recount of each precinct.

The petitioners filed an earlier petition May 27, 1969 seeking the foregoing relief and this Court, by order entered July 14, 1969, refused to issue a rule upon that petition. Action upon the present petition, filed August 13, 1969, was delayed pending the decision of the Supreme Court of the United States in *Lance* v. *The Board of Education of County of Roane,* 153 W.Va. 559, 170 S.E.2d 783, in which that Court reversed the judgment of this Court rendered July 8, 1969 which held unconstitutional Sections 1 and 8 of Article X of the Constitution of West Virginia; Section 16, Article 8, Chapter 11; and Section 4 and 14, Article 1, Chapter 13, Code, 1931, as amended, because violative of the equal protection clause of the Constitution of the United States, *Gordon* v. *Lance,* 403 U. S. 1, 91 S. Ct. 1889, 29 L. Ed. 2d 273. After the decision of the Supreme Court in that case on June 7, 1971, this Court, on July 28, 1971, issued a rule upon the second petition returnable September 28, 1971, at which time this proceeding was submitted for decision upon the second petition, the answer of the defendants, the brief as amici curiae in behalf of The West Virginia Education Association, The National

Education Association and The Monroe County Education Association, and the oral arguments and the briefs of counsel in behalf of the respective parties.

The material facts are not disputed and the questions presented for decision are questions of law.

The controlling question is whether the defendants should be required to reconvene and upon a recount reject 566 absentee ballots, 485 of which were voted in favor of the special levy and 81 of which were voted against the levy. If all those ballots are valid and should be counted, the levy would have been authorized by more than 60% of the vote cast, but if those ballots are rejected and not counted the result would have been only 58.7% of the vote cast instead of the required 60% of such vote. Otherwise stated, if those ballots are rejected, the result of the election as certified by the defendants acting as the board of canvassers would be changed and the special levy would be unauthorized because of the failure of 60% of the vote cast in favor of the levy.

The petitioners contend that because of the failure of the Clerk of the Circuit Court to provide for each absentee voter a return envelope bearing a printed declaration, and the failure of the voter to sign such declaration, all such absentee ballots are invalid and should not be counted in the election. The statute which required the declaration, Section 6, Article 3, Chapter 64, Acts of the Legislature, Regular Session, 1963, in effect at the time of the election, provided that the absentee voter should declare that he is a resident of a designated precinct of the magisterial district, county and state, that he is entitled to vote at such precinct in the election to be held on a designated date, that for stated reasons he will be unable to vote in person at such election, that he has personally marked the enclosed ballot in secret and has enclosed it in the envelope and sealed the envelope without exhibiting the ballot to any other person, and that the foregoing statements in the declaration are true and correct to the best of his knowledge and belief. The statute also provided that the Circuit

Clerk shall enclose the ballot or ballots in an unsealed envelope which shall bear upon its face the name, official title and post office address of the clerk and upon the other side a printed declaration in the prescribed form which shall be signed by the voter. The declaration was omitted from the present statute when it was amended by Section 3, Article 3, Chapter 28, Acts of the Legislature, Regular Session, 1970.

In support of the contention of the petitioners that the failure of the Circuit Clerk to place a printed declaration upon the return envelope of each absentee voter and the failure of the voter to sign such declaration invalidated all the absentee ballots involved in this proceeding, the petitioners assert that inasmuch as the statute provided that the clerk shall place the declaration upon the envelope and that the voter shall sign the declaration, the statute imposed a mandatory duty upon the clerk and the voter in that respect and that their failure to comply with the statute renders the absentee ballots void and requires their rejection from any count of the vote cast at the election. There is no merit in the contention of the petitioners that for the reasons stated such absentee ballots are invalid. In numerous cases this Court has considered statutes using the word "shall", though mandatory in form, to be directory in effect. *State ex rel. Hammond* v. *Hatfield,* 137 W.Va. 407, 71 S.E.2d 807; *Funkhouser* v. *Landfried,* 124 W.Va. 654, 22 S.E.2d 353; *Hatfield* v. *Board of Canvassers of Mingo Co.,* 98 W.Va. 41, 126 S.E. 708. Here the absentee ballots which under the applicable statute were subject to challenge, were not challenged, and there is no showing of fraud in connection with the preparation of the ballots or the carrier envelopes or the manner in which the ballots were voted by each voter. Also, there is no showing that any of the voters of the ballots was not a qualified voter or that any of them was in any manner disqualified or was not entitled to cast an absentee ballot in the election. There is likewise no showing or even any intimation that the school board levy election was not a fair election.

It is manifest and it is not disputed that the absence of the required declaration from the carrier envelope was due to the failure of the Circuit Clerk to comply with that requirement of the statute and that the failure of the voter of each absentee ballot to sign the declaration as required by the statute was caused primarily by the mistake or failure of the Circuit Clerk to prepare the declaration and place it upon the carrier envelope. It is unreasonable to expect or to require the voter to prepare the somewhat complicated declaration. The statute does not require this of the voter. His requirement is to sign the declaration to be placed on the envelope by the clerk.

It is well established by the decisions of this Court that though mistakes and irregularities in elections made by the voter may often destroy his ballot, those of officers do not affect the election if a fair election has been held. *State ex rel. Gengo* v. *Cudden,* 153 W.Va. 190, 168 S.E.2d 541; *State ex rel. Hammond* v. *Hatfield,* 137 W.Va. 407, 71 S.E.2d 807; *Hatfield* v. *Board of Canvassers of Mingo Co.,* 98 W.Va. 41, 126 S.E. 708; *Morris* v. *Board of Canvassers of City of Charleston,* 49 W.Va. 251, 38 S.E. 500.

In the *Gengo* case, Point 1 of the Syllabus contains this quotation of Point 2, Syllabus, *Morris* v. *Board of Canvassers of City of Charleston,* 49 W.Va. 251, 38 S.E. 500: "As to mistakes and irregularities in elections, a distinction exists between those made by the voter and those made by officers of election. In the former case such mistakes and irregularities may often destroy the ballot, while those of officers do not affect the election, if a fair election has been held."

In the *Hammond* case this Court held in Point 7 of the Syllabus that "The provision of Code, 3-6-5, that: 'Before any [absentee] ballot is mailed or delivered, the clerk shall affix his official seal and he and the other members of the board of ballot commissioners shall place their signatures near the lower left hand corner on the back thereof,' is substantially complied with when one or both of the ballot commissioners and the clerk, as *ex-officio*

ballot commissioner, have signed the ballot on the back thereof, notwithstanding that the clerk has not affixed the official seal, the latter provision being merely directory." See also *Gibson* v. *Bower,* 137 W.Va. 462, 73 S.E.2d 817, and *Burrows* v. *Bower,* 137 W.Va. 459, 73 S.E.2d 825, involving absentee ballots in which the application for such ballots had not been made within the period prescribed and the official seal of the Circuit Clerk had been omitted from the ballots and some of the ballots had not been signed personally by him.

In the *Gibson* case the opinion contains this language: "This court has said on several occasions that a voter should not be disfranchised merely because of irregularities attributable to officers of the election. *State ex rel. Hammond v. Hatfield,* 137 W.Va. 407, 71 S.E.2d 807; *Hatfield v. Board of Canvassers,* 98 W.Va. 41, 126 S.E. 708; *Morris* v. *Board of Canvassers,* 49 W.Va. 251, 38 S.E. 500. 'The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part of election officers to perform their duties according to the letter of the statute where such failure has not prevented a fair election.' McCrary on Elections, Fourth Edition, § 724."

In *Funkhouser* v. *Landfried,* 124 W.Va. 654, 22 S.E.2d 353, in which a voter failed to sign the poll book the signing of which the applicable statute required without expressly making the signing a prerequisite to voting, this Court held in Point 3 of the Syllabus that "Failure of all the voters of a precinct, in a primary election, through the common error of themselves and the election officials, to sign the poll book, will not justify the rejection of the votes of the precinct, in the absence of fraud, if such voters appear to have been otherwise qualified." In that opinion are these statements: "It must be kept in mind that all statutory regulations of voting must be subordinate to the constitutional provision that '* * * citizens of the State shall be entitled to vote at all elections held within the counties

in which they respectively reside; * * *,' with certain exceptions, not here pertinent. Constitution of West Virginia, Article IV, Section 1." The opinion also uses this pertinent language: "The failure of a voter to perform an act prescribed by the election statutes ought not deprive him of the privilege of voting, unless the statute plainly and clearly, by express provision or necessary implication, requires that result."

The statute which required the signature of the voter to the declaration contained no express provision that the failure to comply with that requirement shall render a ballot void or direct that it shall not be counted. In that respect it was unlike the provision in Section 7, Article 6, Chapter 3, Code, 1931, as amended, that "Any ballot which is not endorsed with the names of the poll clerks, as provided in this chapter, shall be void and shall not be counted;", which provision has been held to be mandatory and to render such ballot void and not to be counted. *State ex rel. Bumgardner* v. *Mills,* 132 W.Va. 580, 53 S.E.2d 416.

If the Legislature had intended to render void and prevent the count of an absentee voter's ballot in the absence of the signed declaration required by the statute, the Legislature could and presumably would have made the signing of the declaration a condition precedent to the right to cast such ballot and would have provided that such ballot shall be void and not be counted; but the statute contained no such provision. It is true that the statute imposed the penalty of false swearing by an absentee voter who makes untrue statements in his application and in the declaration but such penalty, if incurred, does not render the ballot of such absentee voter void or prevent it from being counted. In the case of *Doll* v. *Bender,* 55 W.Va. 404, 47 S.E. 293, the voter made identifying marks upon his ballot. The statute then in effect, Section 79, Chapter 3, Code, 1899, provided that "No voter shall place any mark upon his ballot, nor suffer or permit any other person to do so, by which it may be afterward identified as the ballot voted by him. Whoever shall violate any provision of this section shall be deemed guilty

of a felony * * *". In the opinion by Judge Brannon this Court said: "We hold that such mark does not destroy the ballot, on the principle that a citizen can be disfranchised only by clear expression of legislative intent to do so. The Legislature has not said that this mark shall reject the ballot. It had the particular matter under consideration. It selected its penalty. It made the act a crime, but did not add that the ballot should not be counted."

In *Morris* v. *Board of Canvassers of City of Charleston,* 49 W.Va. 251, 38 S.E. 500, this Court said "We know of the large volume of law that statutes regulating elections are frequently treated as directory, and that mistakes and irregularities should not disfranchise a voter or deprive a candidate of his vote where the purpose and intent of the voter can be ascertained. *Loomis v. Jackson,* 6 W.Va. 613; *Dial v. Hollandsworth,* 39 *Id.* 1. In answer to this I call attention to the fact that authorities say that there is a distinction in this respect between errors of officers conducting elections, and errors of voters themselves; that in the former case, as a voter has no power over the officer, that officer's blunder shall not disfranchise the voter; whereas, the voter may by his own neglect disfranchise himself. This will be seen from authorities cited above. Having just observed section 724 of McCrary on Elections, I regard this distinction sound. It says: ' * * *. The justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question' of the mandatory or directory character of the Australian Election Law."

The principal purpose of the requirement of a declaration to be placed upon the envelope by the clerk and to be signed by the absentee voter was to provide his signature on the declaration for comparison by the election officers with his signature on the poll book. As the application for the absent voter's ballot must be signed by the voter and is delivered with the voted ballot to the precinct election officers there would seem to be no reason for continuing the requirement of a signed declaration for the purpose of

comparing and establishing the genuineness of the signature and the identity of the voter and perhaps for that reason and the belief that a signed declaration was not necessary for a valid absentee ballot the Legislature abolished that requirement by omitting it from the present statute which was enacted in 1970.

From the foregoing authorities it is clear that the 566 absentee voters' ballots were properly counted by the defendants upon the recount, that they are valid ballots and that none of them should be rejected from the count. Upon the undisputed facts disclosed by the record this Court is unwilling to disfranchise the qualified voters who cast the 566 absentee ballots, which would occur if those ballots are rejected and not counted in the special school board election of March 18, 1969.

The prayer of the petitioners that the defendants be required to hear and consider extrinsic evidence should not be granted. In *State ex rel. Bumgardner* v. *Mills,* 132 W.Va. 580, 53 S.E.2d 416, this Court held in Point 3 of the Syllabus that "Upon a recount of ballots cast at an election, a board of canvassers is without authority to consider or determine matters not shown by the election returns or by relevant evidence of the commissioners, the poll clerks, or other persons present at such election respecting such returns, or which may be established only by evidence extrinsic to the election returns." The foregoing quotation is set forth in Point 2, Syllabus, *State ex rel. Hammond* v. *Hatfield,* 137 W.Va. 407, 71 S.E.2d 807.

The writ of mandamus as prayed for is denied.

*Writ denied.*