575 S.E.2d 257

STATE of West Virginia ex rel. John H. BOWLING, Jr., Candidate for Greenbrier County Commission, Petitioner,

v.

**GREENBRIER COUNTY COMMISSION, sitting as the Board of Ballot Commissioners; B.J. Livesay, Clerk of the Greenbrier County Commission; Clark Thacker, Candidate for the Greenbrier County Commission; the Honorable George Scott, Special Judge of the Circuit Court of Greenbrier County, Respondents,**

and

**Clark Thacker and Vernon Hayslett, President, on Behalf of Greenbrier County Citizens for Fair and Open Government, Petitioners Below, Appellants,**

v.

**County Commission of Greenbrier County, Betty Crookshanks, Joe Feamster, Steve Malcolm, Commissioners, and B.J. Livesay, in his capacity as Clerk of the County Commission of Greenbrier County, Respondents Below, Appellees,**

**John Bowling, Intervenor Below, Appellee.**

Nos. 30876, 30877.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 17, 2002.

Decided Dec. 2, 2002.

R. Brandon Johnson, Esq., Stroebel & Johnson, Lewisburg, West Virginia, Attorney for Petitioner and Appellants.

Barry L. Bruce, Esq., Barry L. Bruce & Associates, Lewisburg, West Virginia, Attorney for Respondents and Appellees.

PER CURIAM:

This is an opinion setting forth the Court's reasoning in connection with an October 22, 2002 order reinstating an election contest ruling of the Greenbrier County Commission.

## I.

In the instant case, we affirm, in part, and reverse, in part, an October 9, 2002 decision of the Circuit Court of Greenbrier County, which reversed an August 2, 2002 decision by the County Commission of Greenbrier County ("Commission") in an election contest proceeding. The Commission decided that the Democratic nomination for a seat on the Greenbrier County Commission had been won in the May 2002 primary by John Bowling, by a one-vote margin over his closest opponent in the primary, Clark Thacker.

Mr. Thacker appealed the Commission's decision to the circuit court; Mr. Bowling intervened and cross-appealed certain rulings. The circuit court heard argument based upon the record before the Commission and reversed several rulings and findings of the Commission, the details of which we discuss below. The overall effect of the circuit court's order was to establish Mr. Thacker as the candidate who had received the most votes in the primary election.

Upon Mr. Bowling's appeal of the circuit court's ruling, we granted expedited review. After receiving briefs and hearing oral argument, we issued an order on October 22, 2002, that reversed the circuit court and reinstated the decision of the Commission, with an opinion to follow. This is that opinion.

## II.

Initially, we observe that we must in cases like the instant one remain ever mindful of the paramount principle that election laws are to be construed in favor of enfranchisement, not disenfranchisement. *See State ex rel. Sowards v. County Comm'n of Lincoln County*, 196 W.Va. 739, 750, 474 S.E.2d 919, 930 (1996). *See Afran v. County of Somerset*, 244 N.J.Super. 229, 232, 581 A.2d 1359, 1361 (1990) ("[E]lection laws must be liberally construed to effectuate the overriding public policy in favor of the enfranchisement of voters."); *see also James Appeal*, 377 Pa. 405, 407, 105 A.2d 64, 65 (1954) (In construing election laws, while courts must strictly enforce all provisions to prevent fraud, an overriding concern must be to be flexible in order to favor the right to vote). Thus, in the absence of evidence of patent error or of fraud, courts should be cautious about "monkeying" with the reasoned determinations of designated election officials—particularly when judicial intervention would result in the disenfranchising of voters.

The county commission sits as the trial court in an election contest proceeding for a county commission seat. *W.Va.Code*, 3–7–6 [2002]. The circuit court sits as an appellate court in such cases. *W.Va.Code*, 3–7–7 [1963]; *Evans v. Charles*, 133 W.Va. 463, 474, 56 S.E.2d 880, 885 (1949) ("The law does not confer upon a circuit court original jurisdiction of an election contest but only appellate jurisdiction which may be invoked in the manner provided by law.").

Thus, in reviewing the results of an election contest pursuant to *W.Va.Code*, 3–7–7 [1963], the circuit court acting as an appellate body must give the county commission's factual determinations the same sort of deference that appellate courts generally give to fact-finder tribunals—disturbing such determinations only when they are arbitrary, capricious, or clearly wrong.

With respect to this point—a point that is central to our resolution of the instant case—Syllabus Point 6 of *Brooks v. Crum*, 158 W.Va. 882, 216 S.E.2d 220 (1975) states:

While the appellate court may examine the record in the review of election con-

tests in order to reach an independent conclusion, it merely determines whether the conclusions of law are warranted by the findings of fact, and it will not, as a general rule, disturb findings of fact on conflicting evidence unless such findings are manifestly wrong or against the weight of the evidence.

█ Additionally, this Court reviews the Commission's and the circuit court's rulings on matters of law *de novo*.

We review below *seriatim* the circuit court's pertinent rulings.

### A.

The first ruling that we address relates to the issue of poll clerk signatures on ballots used in connection with electronic voting. The ballots used in the election in question have an oval by the name of each candidate. A voter indicates their choice of a candidate by darkening the oval beside the candidate's name. When voting is completed, the ballots are read by an optical scanning machine. Each ballot has places for the signatures of two poll clerks, which are to be affixed before the ballot is given to the voter.

The circuit court reversed the County Commission's ruling as to the counting of one ballot (in favor of Mr. Bowling) that was not signed by any poll clerk. The Commission counted the ballot; the circuit court disagreed and held that the ballot could not legally be counted. However, the circuit court agreed with the Commission's ruling that five ballots that had only one poll clerk's signature (also in favor of Mr. Bowling) should be counted.

█ Mr. Thacker contends that if a ballot does not have the signature of two poll clerks, then the ballot may not be counted in an election contest proceeding. Mr. Thacker therefore contends that the circuit court was correct in reversing the Commission on the one "no-signature" ballot, and wrong on allowing the five "one-signature" ballots to be counted. Mr. Bowling contends that all of the ballots were properly counted by the Commission.

Prior to 2002, *W.Va.Code*, 3–4A–19a [2001], relating to procedures for electronic voting

(including the electronic tabulation of ballot cards), stated in pertinent part:

> The requirement that two poll clerks sign a ballot according to this subsection is a *mandatory duty* and is not to be construed as merely directory.... In the course of an election contest, if it is established that a ballot does not contain the two [poll clerks'] signatures required by this section, the ballot is *null, void, and of no effect, and may not be counted.* The requirement that a ballot not be counted if it does not meet the requirements of this section is *mandatory* and not to be construed as merely directory.

*W.Va.Code*, 3–4A–19a(c) [2001] (emphasis added).

In 2002, the Legislature rewrote this section, *inter alia* omitting the italicized language that is quoted above, so that this section in its entirety now reads:

> (a) Where applicable, every ballot utilized during the course of any electronic voting system election conducted under the provisions of this article is to have two lines for the signatures of the poll clerks. Both of the signature lines are to be printed on a portion of the ballot where votes are not recorded by perforation or marking, but which portion is an actual part of the ballot deposited in the ballot box after the voter has perforated or marked his or her ballot and after the ballot stub has been removed. Each of the two poll clerks shall sign his or her name on one of the designated lines provided on each ballot before any ballot is distributed to a voter.

> (b) After a voter has signed the pollbook, as required in section nineteen of this article, the two poll clerks shall deliver a ballot to the voter, which ballot has been signed by each of the two poll clerks as provided in this section: Provided, That where an electronic voting system that utilizes screens upon which votes may be recorded by means of a stylus or by means of touch, an election commissioner shall accompany the voter to the voting device and shall activate the device for voting.

> (c) Any ballot which does not contain the proper signatures shall be challenged.

If an accurate accounting is made for all ballots in the precinct in which the ballot was voted and no other challenge exists against the voter, the ballot shall be counted at the canvas[s].

*W.Va.Code,* 3–4A–19a [2002].

The term "canvas[s]" that is used in the last sentence of the foregoing statutory language refers to testing, by a sampling procedure, of the accuracy of the totals that are obtained through electronic vote tabulating devices. *W.Va.Code,* 3–4A–28 [2001]. *See Ohio County Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983).

Mr. Thacker contends that because only the "canvas[s]" is specified in this last sentence of the 2002 version of 3–4A–19a—that therefore, in any proceedings subsequent to the canvass (such as a recount or an election contest), a strict "two-signature" requirement for ballot validity applies—despite the language change in 2002.

In Syllabus Point 6 of *State ex rel. Bumgardner v. Mills,* 132 W.Va. 580, 53 S.E.2d 416 (1949), this Court held that the provisions in our general election law that call for the signatures of two poll clerks on a ballot are mandatory and not directory, and that any ballot not so endorsed with the names of such poll clerks, other than the ballot of a challenged voter, is void and cannot be counted.

However, in *Manchin v. Dunfee,* 174 W.Va. 532, 536, 327 S.E.2d 710, 714 (1985), this Court subsequently held that the provisions of our general election law are not to be automatically read *in pari materia* with the provisions of law governing electronic voting provisions.[1]

As previously noted, in 2002 the Legislature removed from *W.Va.Code,* 3–4A–19a the "null, void, and of no effect" and "mandatory, not directory" language with respect to the two-signature requirement on ballots used in connection with electronic voting. We view this action by the Legislature as creating an ambiguity in the statutory language, calling into serious question the continued validity of an absolute "two-signature requirement" for ballots used in connection with electronic voting systems.

Although the statute now specifies that ballots without two poll clerk signatures may be counted at the canvass, the statute is entirely silent on the validity of such ballots at later stages; whereas before it was explicit on this subject. If the Legislature had intended to continue to have a two-signature requirement be "mandatory, not directory," so that a ballot without two signatures was in all cases but the canvass "null and void"— then the removal of the statutory language in question to that effect, in three separate instances, would simply not make any sense.

This statutory ambiguity must be viewed in the light of our holding in *Manchin, supra,* to the effect that the *in pari materia* principle does not automatically apply between our laws governing electronic voting systems and our other election statutes. This principle, applied to the instant case, further supports the view that under the 2002 changes, the "two-signature" requirement that we recognized in *State ex rel. Bumgardner v. Mills, supra* does not have mandatory rather than directory application to ballots used in connection with electronic voting procedures.

Additionally, the record in the instant case indicates that during the election contest, the Commission was advised by the Office of the West Virginia Secretary of State that the 2002 changes in the law governing electronic voting permitted the counting of ballots that did not have the signatures of two poll clerks;[2] and that no party has suggested at

---

1. We further held in *Manchin v. Dunfee* that— under the then-existing language of *W.Va.Code,* 3–4A–19a [1983], stating that a lack of two poll clerk signatures made a ballot "null and void," and that this rule was "mandatory not directory"—that a ballot used in connection with electronic voting systems could not be challenged in a canvass or a recount, but only in a subsequent election contest proceeding. We also said in *Manchin v. Dunfee* that "... when the legislature

enacted *W.Va.Code,* 3–4A–19a, it intended that ballot cards used in electronic voting systems are required to be signed by the two poll clerks." 174 W.Va. at 535, 327 S.E.2d at 713, .

2. Given the ambiguity that we have noted in the statute as a result of the changes made in 2002, the Secretary of State may wish to submit proposed clarifying language to the Legislature in either a statutory or regulatory form.

any time that the lack of poll clerk signatures on the ballots in question was the result of fraud; and further that it was stipulated that an accurate accounting was made for all ballots in the precincts in which the ballots were voted and no other challenges existed against the voters, as required by *W.Va.Code*, 3–4A–19 [2002] for the counting of ballots that do not have two signatures "at the canvas[s]." *Id.*

In light of all of the foregoing, we conclude that the Commission did not exceed their legal prerogative in determining in the election contest proceeding that the ballots that lacked poll clerk signatures could be legally counted. Consequently, the circuit court's reversal of the Commission's determination on this issue was erroneous.

## B.

The second issue that we address relates to improperly marked ballots.

■ In the primary race in which Mr. Bowling and Mr. Thacker were the two top vote getters, there were a total of five candidates for one spot on the general election ballot, and voters were instructed on the ballot to vote for one person. In the election contest, the Commission decided *not* to count two ballots on which the voter had filled in the ovals beside two candidates' names, instead of beside only one name. In each case, the voter apparently placed a handwritten "X" over (or possibly under) one of the two filled-in ovals. On one of these ballots, the "non-X-ed" oval was a vote for Mr. Thacker; on the other, the "non-X-ed" oval was for another candidate (not Mr. Bowling). The circuit court reviewed the two ballots and determined that it was clear that the voter had chosen the person whose oval was not also "X-ed;" the circuit court therefore reversed the Commission's determination on this issue and counted the votes.

The election contest laws, as previously noted, designate the county commission as the trial court and finder of fact in an election contest proceeding. In the instant case, the record shows that the Commission carefully examined a number of ballots that raised voter choice or intent issues. The

Commission determined that the voter's intent for these two particular ballots could not be clearly ascertained. This determination—in the absence of a statute or other principle of law requiring a particular determination to be made as a matter of law, if certain objective facts are present—was a question of fact: *i.e.*, what did the voter intend, or was it impossible to ascertain that intent with reasonable certainty?

A question about a matter of fact—the ascertainability of the voter's intent, and what that intent, if ascertainable, was—is squarely within the province of the finder of fact, the Commission. *Brooks v. Crum, supra.* While we recognize that in the instant case reasonable minds can certainly differ on the answer to this question, that disagreement serves nicely to make the point that a court should not in such a case say that the Commission was clearly wrong in making its factual determination. Accordingly, we find that the circuit court erred in reversing the Commission on this issue.

## C.

■ The third issue that we address relates to the disqualifying of certain challenged ballots. The circuit court reversed the Commission's decision to count a number of ballots—approximately 75—that had been challenged at the polls. In resolving the challenges, these ballots were checked against computerized voter registration records that were maintained at the courthouse, and not directly against the "hard copy" original voter registration books. It appears that the challenged ballots were thereafter erroneously co-mingled with other ballots, in such a way as to prohibit identifying them for further consideration.

The circuit court, reasoning that the checking of the ballots against the computer records raised a substantial possibility that the challenges had not been correctly resolved, disallowed the counting of these challenged ballots. As a result of the circuit court's ruling, the vote totals of the candidates were adjusted downward by the amounts that they had been increased by the inclusion of the challenged ballots—reducing Mr. Bowling's

total by 11 votes and Mr. Thacker's by 6 votes.[3]

While the parties focus their argument on the legal propriety of the Commission's checking the ballots against the computer records, we do not think that issue is dispositive. We will assume *arguendo* that the Commission should have checked the challenged ballots against the original voter registration books, and should have thereafter segregated the challenged ballots so that they could be individually reviewed.

However, under the facts of the instant case, any such assumed errors were not sufficient to discount the entire group of challenged ballots. No showing was made at the contest hearing that there were other than minor irregularities in the computer records, or that there was substantial error in the checking process. We are not pointed to any place in the record where a contemporaneous objection was lodged to the use of the computer records; presumably the original records were available in the event such a challenge had been made.

The standard for review of challenged ballots is set forth at *W.Va.Code,* 3–1–41 [1963], which states in pertinent part (with emphasis added):

> In such determinations the county court [now commission] shall disregard technical errors, omissions or oversights, if it can be *reasonably ascertained* that the challenged voter was entitled to vote.

In light of this reasonableness standard, and the foregoing-referenced principle of law favoring enfranchisement, and the fact that no suggestion of fraud has been made in the instant case, we conclude that the Commission acted reasonably with respect to its review of the challenged ballots, and that its decision on this issue should not have been overturned by the circuit court.

### D.

There are two additional issues that we address briefly. On two other challenges to its election contest rulings, the circuit court

upheld the Commission's ruling. Mr. Thacker challenged the counting of absentee ballots on the grounds of alleged irregularities in the absentee voting procedures. Mr. Bowling challenged the counting of two precincts on the grounds that in those precincts a member of one party voted a primary ballot for another party. We have reviewed the circuit court's affirmance of the Commission on these two issues and conclude that these rulings were correct.

### III.

For the foregoing reasons, the order of the Circuit Court of Greenbrier County is reversed, and the election results certification of the Greenbrier County Commission is reinstated.

Reversed.

---

**3.** Due to uncertainty in the record before us, these figures may be slightly inexact; but any inexactitude is not of substantive significance.