IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

SEPTEMBER 2016 TERM

_____

No. 16-1040

_____

FILED

**November 30, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WILLIAM DOUGLAS WITTEN,
Petitioner,


V.


JOSHUA BUTCHER,
Respondent.

_____

Appeal from the Special Court Convened Under W. Va. Code § 3-7-3

AFFIRMED
_____

Submitted:  November 21, 2016
Filed: November 30, 2016

Harvey D. Peyton                         Michael B. Hissam
Thomas H. Peyton                         Ryan McCune Donovan
Peyton Law Firm                          J. Zak Ritchie
Nitro, West Virginia                     Bailey & Glasser, LLP
Attorneys for Petitioner                 Charleston, West Virginia
                                         Attorneys for Respondent

JUSTICE DAVIS delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      The provision in W. Va. Code § 3-7-3 (1963) (Rep. Vol. 2013), requiring oral argument to be held in an appeal of a contested election, is invalid because it is in conflict with the oral argument criteria of Rule 18 of the West Virginia Rules of Appellate Procedure.

2.      "Failure of all the voters of a precinct, in a primary election, through the common error of themselves and the election officials, to sign the poll book, will not justify the rejection of the votes of the precinct, in the absence of fraud, if such voters appear to have been otherwise qualified." Syllabus point 3, *Funkhouser v. Landfried*, 124 W. Va. 654, 22 S.E.2d 353 (1942).

3.      "In the absence of fraud or misconduct preventing a free expression of the will of the voters, failure of commissioners of election and poll clerks to take and subscribe the oaths in strict compliance with [the law], will not vitiate an election conducted by such officers." Syllabus, *State ex rel. Revercomb v. Sizemore*, 124 W. Va. 700, 22 S.E.2d 296 (1942).

4.      The voters of this State cannot be disenfranchised or criminally penalized because of errors by polling officials in demarcating "No Electioneering" zones at polling places.

**Davis, Justice:**

This appeal was brought by the Honorable Judge William Douglas Witten ("Judge Witten") from a decision of a three-member Special Court that denied him relief in his contest of the May 10, 2016, nonpartisan election for the Office of Judge of the Seventh Judicial Circuit, Logan County, Division 1. In this appeal, Judge Witten argues that the Special Court should have declared him the winner of the election because of voting irregularities in Lane Precinct 4, Bulwark Precinct 1, and Sharples Precinct 31. After a careful review of the briefs and record submitted on appeal, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The respondent in this proceeding, Joshua Butcher ("Mr. Butcher"), defeated incumbent Judge Witten for the open judicial seat in Division 1 of the Circuit Court of Logan County in the May 10, 2016, nonpartisan election. Judge Witten requested a recount of the ballots. On May 26, 2016, after a recount by the County Commission of Logan County, sitting as a board of canvassers,[1] Mr. Butcher was declared the winner by a margin of 59 votes.[2] This result was certified to the Secretary of State.

---

[1]*See* W. Va. Code § 3-6-9 (2009) (Repl. Vol. 2013).

[2]Mr. Butcher received 4,604 votes, and Judge Witten received 4,545 votes.

1

Judge Witten thereafter timely filed a "Notice of Election Contest" on June 6, 2016, with the Honorable Earl Ray Tomblin,[3] Governor of the State of West Virginia, pursuant to the provisions of W. Va. Code § 3-7-3 (1963) (Repl. Vol. 2013).[4] The notice of contest of election was served on Mr. Butcher. In the notice, Judge Witten requested that a Special Court be convened, pursuant to W. Va. Code § 3-7-3, to determine all matters he challenged in the election and that he be declared the winner. As required by statute, Judge Witten designated John Counts as his choice to serve as a member of the Special Court. Booth Goodwin was designated by Mr. Butcher as his selection as a member of the Special Court. The Governor appointed James S. Arnold as the third member of the Special Court.

Accordingly, on August 23, 2016, the Special Court convened at the courthouse in Logan County to hold a hearing. The hearing was substantively confined to challenges to voting at Lane Precinct 4, Bulwark Precinct 1, and Sharples Precinct 31. The record indicates that, during the hearing, seventeen witnesses testified, and exhibits, stipulations, and evidentiary depositions were introduced. At the conclusion of the hearing, two members of the Special Court found that "the evidence of the errors by election officials in the Bulwark, Sharples and Lane precincts did not rise to the level of demonstrating that

---

[3]Judge Witten designated the notice as a petition.

[4]It appears that Judge Witten twice amended the notice. The initial notice contained challenges to at least three precincts that later were dropped.

their actions amounted to misconduct affecting the result of the election or rendering it unfair." The third member of the Special Court, John Counts ("Mr. Counts"), concurred with the majority as to the findings involving the Bulwark and Sharples precincts. However, Mr. Counts dissented from the findings regarding the Lane Precinct. Mr. Counts believed that all of the votes in that precinct should be disregarded, which would result in Judge Witten being declared the winner of the election. The decision of the Special Court was certified to the Governor as required by statute on October 17, 2016. This appeal by Judge Witten was thereafter filed.

## II.

## STANDARD OF REVIEW

The standard of review on appeal of an election contest proceeding was articulated by this Court in Syllabus point 6 of *Brooks v. Crum*, 158 W. Va. 882, 216 S.E.2d 220 (1975):

> While the appellate court may examine the record in the review of election contests in order to reach an independent conclusion, it merely determines whether the conclusions of law are warranted by the findings of fact, and it will not, as a general rule, disturb findings of fact on conflicting evidence unless such findings are manifestly wrong or against the weight of the evidence.

3

*See also* Syl. pt. 1, *Tillis v. Wright*, 217 W. Va. 722, 619 S.E.2d 235 (2005). Additionally, this Court reviews the lower tribunal's rulings on matters of law *de novo*. *State ex rel. Bowling v. Greenbrier Cty. Comm'n*, 212 W. Va. 647, 650, 575 S.E.2d 257, 260 (2002).

## III.

## DISCUSSION

Initially, we observe that, in contested election cases, we must "remain ever mindful of the paramount principle that election laws are to be construed in favor of enfranchisement, not disenfranchisement." *Bowling*, 212 W. Va. at 649, 575 S.E.2d at 259. *See also State ex rel. Sowards v. Cty. Comm'n of Lincoln Cty.*, 196 W. Va. 739, 750, 474 S.E.2d 919, 930 (1996) ("[A] mere violation of W. Va. Code, 7-14-15(a), is insufficient to set aside an election and, in effect, disenfranchise the voters of a county. The sanctity of the ballot, which is the keystone of our democracy, must be preserved."); Syl. pt. 2, *Pridemore v. Fox*, 134 W. Va. 456, 59 S.E.2d 899 (1950) ("In the absence of a showing of fraud or misconduct on the part of election officers, preventing a free expression of the will of the voters, and affecting the result of the municipal election, irregularities in the conduct thereof by such officers, not shown to have affected its result, will not vitiate such election."). This Court held in Syllabus point 2 of *Maynard v. Hammond*, 139 W. Va. 230, 79 S.E.2d 295 (1953), that

> [i]rregularities in the conduct of an election, even though
> they constitute a violation of the election laws, not shown to

4

have affected its result, will not vitiate an election in the absence of a showing of fraud or misconduct preventing the free expression of the will of the voters.

In the instant proceeding, Judge Witten has alleged voting irregularities in three Logan County precincts: Bulwark, Sharples, and Lane. We will review the allegations of irregularities regarding each precinct separately.

However, before we analyze the substantive issues in this appeal we must first address an issue that impacts the scope of our authority to resolve election contest appeals under W. Va. Code § 3-7-3. In this proceeding the parties waived oral argument before this Court. However, W. Va. Code § 3-7-3 requires oral argument as follows:

> [T]he special court shall file with the clerk of the supreme court of appeals all papers, documents, testimony, evidence, and records, or certified copies thereof, which were before it at the hearing resulting in the final decision from which the petitioner appeals, together with a copy in writing of its final decision; and, *after argument by counsel*, the court shall decide the matter in controversy, both as to the law and the evidence, as may seem to it to be just and right.

(Emphasis added). The statute's apparent mandatory requirement that oral argument be held in an appeal of a contested election is in direct conflict with Rule 18 of our Rules of Appellate Procedure. Specifically, Rule 18(a) provides as follows:

> (a) *Criteria for oral argument* – Oral argument is unnecessary when:
> (1) all of the parties have waived oral argument; or

5

(2) the appeal is frivolous; or

(3) the dispositive issue or issues have been authoritatively decided; or

(4) the facts and legal arguments are adequately presented in the briefs and record on appeal, and the decisional process would not be significantly aided by oral argument.

*See also* W. Va. R. App. P. 19 & 20 (discussing oral argument procedures for cases under these rules).

It is clear that, under Rule 18(a), oral argument in an appeal to this Court is discretionary; however, through W. Va. Code § 3-7-3, the Legislature has required this Court to hold oral argument in election appeals. The Legislature does not have the authority to impose such a requirement. We have made clear on numerous occasions that this Court has the exclusive constitutional "power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the state relating to writs, warrants, process, practice and procedure, which shall have the force and effect of law." W. Va. Const. art. VIII, § 3. *See also* Syl. pt. 6, *State Farm Fire & Cas. Co. v. Prinz*, 231 W. Va. 96, 743 S.E.2d 907 (2013) ("Because it addresses evidentiary matters that are reserved to and regulated by this Court pursuant to the Rule-Making Clause, Article VIII, § 3 of the West Virginia Constitution, West Virginia Code § 57-3-1 (1937), commonly referred to as the Dead Man's Statute, is invalid, as it conflicts with the paramount authority of the West Virginia Rules of Evidence."); Syl. pt. 3, *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005) ("The provisions contained in W. Va. Code § 55-7B-6d (2001) (Supp. 2004) were enacted in

6

violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, insofar as the statute addresses procedural litigation matters that are regulated exclusively by this Court pursuant to the Rule-Making Clause, Article VIII, § 3 of the West Virginia Constitution. Consequently, W. Va. Code § 55-7B-6d, in its entirety, is unconstitutional and unenforceable."); Syl. pt. 6, *Mayhorn v. Logan Med. Found.*, 193 W. Va. 42, 454 S.E.2d 87 (1994) ("Rule 702 of the West Virginia Rules of Evidence is the paramount authority for determining whether or not an expert is qualified to give an opinion. Therefore, to the extent that *Gilman v. Choi*, 185 W. Va. 177, 406 S.E.2d 200 (1990) indicates that the legislature may by statute determine when an expert is qualified to state an opinion, it is overruled.").

In view of our constitutional Rule-Making authority, we now hold that the provision in W. Va. Code § 3-7-3, requiring oral argument to be held in an appeal of a contested election, is invalid because it is in conflict with the oral argument criteria of Rule 18 of the West Virginia Rules of Appellate Procedure. As previously mentioned, based upon the application of Rule 18(a)(1), the parties waived oral argument.

### A.  Bulwark Precinct

The first issue we address involves ten voters at the Bulwark Precinct who did not sign the poll book for identification purposes. All parties agree that ten voters failed to

sign the poll book.  The dispute involved with this issue is the impact this failure should have

on all the votes cast at the Bulwark Precinct.  Judge Witten contends that, because of this

irregularity all of the votes cast in the Bulwark Precinct "must be rejected."[5]  The Special

Court unanimously concluded that this irregularity, did not warrant disturbing the votes cast

in the Bulwark Precinct.  We agree with the Special Court.

We begin by observing that W. Va. Code § 3-1-34(a) (2016) (Supp. 2016)

requires voters to sign the poll book.[6]  This statute provides in relevant part:

> If that person is found to be duly registered as a voter at that
> precinct, he or she shall sign his or her name in the designated
> location provided at the precinct.  If that person is physically or
> otherwise unable to sign his or her name, his or her mark shall
> be affixed by one of the poll clerks in the presence of the other
> and the name of the poll clerk affixing the voter's mark shall be
> indicated immediately under the affixation.  No ballot may be
> given to the person until he or she signs his or her name on the
> designated location or his or her signature is affixed thereon.

The statute clearly and unambiguously requires voters to sign the poll book prior to being

given a ballot.  It is well settled that "[w]here the language of a statute is plain and

unambiguous, there is no basis for application of rules of statutory construction; but courts

---

[5]The record indicates that Judge Witten received 171 votes from the Bulwark
Precinct, and Mr. Butcher received 203 votes.

[6]This statute was amended in 2016. However, the amendment did not affect the
relevant language in W. Va. Code § 3-1-34(a) (2008) (Repl. Vol. 2013).

must apply the statute according to the legislative intent plainly expressed therein." Syl. pt. 1, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965).

Both the Special Court and Mr. Butcher relied upon two of our cases addressing the issue of voters failing to sign voting documents: *Funkhouser v. Landfried*, 124 W. Va. 654, 22 S.E.2d 353 (1942), and *State ex rel. Heavener v. Perry*, 155 W. Va. 353, 184 S.E.2d 136 (1971).

In *Funkhouser*, the petitioner was a losing candidate in the primary election for the Republican nomination for the United States Senate. The petitioner filed a petition for a writ of mandamus in this Court to compel the Board of Canvassers of Jackson County to reject all the votes cast in Precinct 39, because none of the voters signed the poll book as required by statute.[7] This Court denied the requested writ based upon the following reasoning:

> We conclude, therefore, that the failure of all the voters in precinct No. 39 in Jackson County to sign the poll book, in the absence of fraud or proof that the votes are otherwise illegally cast, is not sufficient ground for disregarding these votes. This conclusion must not be understood to imply that the statutory requirement that persons offering to vote shall sign the poll book is nullified or rendered futile. This signing is one of the means of identifying voters, perhaps the most important, and should be rigorously enforced by election officials. But, where the failure

---

[7]The evidence revealed that the voters' names were signed by a poll clerk.

9

to sign the poll book resulted from an innocent and mutual mistake by both voters and the officials, and the voters were otherwise qualified, the ballots of such voters will not be held to be invalid for that reason alone.

*Funkhouser*, 124 W. Va. at 661-62, 22 S.E.2d at 357. The opinion went on to set out the following principle of law in Syllabus point 3 of *Funkhouser*:

Failure of all the voters of a precinct, in a primary election, through the common error of themselves and the election officials, to sign the poll book, will not justify the rejection of the votes of the precinct, in the absence of fraud, if such voters appear to have been otherwise qualified.

124 W. Va. 654, 22 S.E. 2d 353.

The decision in *Heavener* involved the failure of absentee voters to sign a declaration as required by law. The declaration was not provided to the absentee voters. The challenged voting in *Heavener* concerned ballots voted at a special school board levy election. The petitioners filed for a writ of mandamus to require the Board of Canvassers of Monroe County to reject all the absentee votes. This Court denied the writ based upon the following:

Here the absentee ballots which under the applicable statute were subject to challenge, were not challenged, and there is no showing of fraud in connection with the preparation of the ballots or the carrier envelopes or the manner in which the ballots were voted by each voter. Also, there is no showing that any of the voters of the ballots was not a qualified voter or that any of them was in any manner disqualified or was not entitled to cast an absentee ballot in the election. There is likewise no

10

showing or even any intimation that the school board levy election was not a fair election.

It is manifest and it is not disputed that the absence of the required declaration from the carrier envelope was due to the failure of the Circuit Clerk to comply with that requirement of the statute and that the failure of the voter of each absentee ballot to sign the declaration as required by the statute was caused primarily by the mistake or failure of the Circuit Clerk to prepare the declaration and place it upon the carrier envelope. . . .

. . . .

The statute which required the signature of the voter to the declaration contained no express provision that the failure to comply with that requirement shall render a ballot void or direct that it shall not be counted. . . .

If the Legislature had intended to render void and prevent the count of an absentee voter's ballot in the absence of the signed declaration required by the statute, the Legislature could and presumably would have made the signing of the declaration a condition precedent to the right to cast such ballot and would have provided that such ballot shall be void and not be counted[.]

*Heavener*, 155 W. Va. at 356-59, 184 S.E.2d at 138-40. This Court set out the following general principle of law in Syllabus point 2 of *Heavener*:

The failure of a voter to perform an act prescribed by an election statute will not deprive him of the privilege of voting unless the statute plainly and clearly, by express provision or necessary implication, requires that result.

155 W. Va. 353, 184 S.E.2d 136.

Although the statutes reviewed in *Funkhouser* and *Heavener* are worded differently than W. Va. Code § 3-1-34(a), the underlying policy considerations of both cases inform our decision in resolving the signature irregularity in this case. Both *Funkhouser* and *Heavener* stand for the proposition that the voters of this State will not be disenfranchised merely upon a showing that they failed to comply with a signature requirement for voting.[8]

In the instant proceeding, the Special Court found "that ten qualified voters merely failed to sign the poll book as a result of their own and poll worker error." The Special Court also found that "the parties have stipulated that no evidence of poll worker fraud or misconduct exists." The record additionally shows that the Special Court was apparently prepared to have all ten voters testify. However, as a result of two of the voters, Amanda Dillon and Robert Leete, testifying that they voted but forgot to sign the poll book, Judge Witten stipulated that the remaining eight voters would testify similarly–therefore, the remaining eight voters did not have to testify.[9] Thus the record reflects that the ten voters

_____

[8]Judge Witten cited, without any discussion, three cases that have no application to this issue. *See Brooks v. Crum*, 158 W. Va. 882, 216 S.E.2d 220 (1975) (involving improperly assisting voters to cast vote and voting after poll closed); *Terry v. Sencindiver*, 153 W. Va. 651, 171 S.E.2d 480 (1969) (voting after poll closed); *State ex rel. Dotson v. VanMeter*, 151 W. Va. 56, 150 S.E.2d 604 (1966) (addressing former version of W. Va. Code § 3-6-7 requiring voiding ballots not signed by poll clerks; remedy removed from statute in 2003).

[9]Judge Witten has set out the following sentence in his brief: "Postelection parol evidence is not an accepted method for voter identification." Insofar as this statement

(continued...)

who failed to sign the poll book were qualified to vote and, in fact, voted. Judge Witten has offered no evidence that voter fraud or intentional misconduct was involved with the failure of the ten voters to sign the poll book.[10] Although this Court recognizes the importance of

---

[9](...continued)
was not developed, we will not consider it. *See Covington v. Smith*, 213 W. Va. 309, 317 n.8, 582 S.E.2d 756, 764 n.8 (2003) (stating that casual mention of an issue in a brief is insufficient to preserve the issue on appeal). We will note in passing that our cases have recognized that a tribunal "sitting as an election contest court, may take evidence, consider and make determination of matters extrinsic to the election returns." *Miller v. County Comm'n of Boone Cty.*, 208 W. Va. 263, 268, 539 S.E.2d 770, 775 (2000). "Evidence of fraud or misconduct extrinsic to the election returns . . . is properly cognizable in an election contest proceeding." Syl. pt. 7, *Maynard v. Hammond*, 139 W. Va. 230, 79 S.E.2d 295 (1953).

[10]During the direct and cross-examination of voter Robert Leete, the following was brought out:

[**DIRECT EXAMINATION**]

> [Counsel for Mr. Butcher]: That's fine. That's fine. It is. Was there anything going on on Election Day that could have caused you to potentially forget to sign the poll book when you were there at the precinct?
>
> [Witness]: Unless it would be my wife has emphysema and she's confined to a scooter and oxygen and I spend a lot of time when we're out making sure that she's got room and room to maneuver and such as that, I might have been distracted by that.
>
> [Counsel for Mr. Butcher]: Thank you.

[**CROSS-EXAMINATION**]

> [Counsel for Judge Witten]: Actually, Mr. Leete, that's probably what did happen, isn't it? I mean, your wife signed the book.

(continued...)

13

complying with the signature requirement imposed by W. Va. Code § 3-1-34(a), we are equally mindful of the constitutional right of the voters of this State to cast their vote and have their vote counted. *See* W. Va. Const. art. IV, § 1 ("The citizens of the state shall be entitled to vote at all elections held within the counties in which they respectively reside."). We will not allow a technical error, without more, to override this constitutional right. Thus

---

[10](...continued)
[Witness]: Yes.

[Counsel for Judge Witten]: Right before you did. I mean, you were the 279th (sic) voter. Let me just see here. It's L-e-e-t-e, isn't it?

[Witness]: Yes, sir.

[Counsel for Judge Witten]: Stella is your wife?

[Witness]: Right.

[Counsel for Judge Witten]: So you were voter 379 and she was voter 380, and you were just tending to your wife, who's ill with emphysema–

[Witness]: Uh-huh

[Counsel for Judge Witten]: –and moved on without getting signed?

[Witness]: Yes, sir.

[Counsel for Judge Witten]: But your wife signed?

[Witness]: Right.

14

we find no reason to disturb the Special Court's ruling on the votes cast at the Bulwark

Precinct.

### B. Sharples Precinct

The next issue raised by Judge Witten is that the poll workers at the Sharples

Precinct were not qualified to carry out their duties because of the absence of evidence that

they took the required statutory oath. Consequently, Judge Witten argues that this Court must

"reject the entirety of the results from this precinct."[11]  We disagree.

The requirement that poll workers take an oath before carrying out their duties

is set out under W. Va. Code § 3-1-30a(a) (1993) (Repl. Vol. 2013) as follows:

> Each commissioner of election and poll clerk, as defined in this article, before entering upon his or her duties, shall take orally and subscribe to the appropriate oath, as prescribed herein. Such oath may be taken before and administered by one of the election commissioners or poll clerks, who in turn may take the same before another election commissioner or poll clerk. For the purposes of this article, all election commissioners and poll clerks, having first been sworn, are authorized to administer oaths.

This statute is clear and unambiguous in its requirement that poll workers take an oath.  *See*

Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d

---

[11]The record indicates that Judge Witten received 32 votes from the Sharples Precinct, and Mr. Butcher received 61 votes.

353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). The Special Court unanimously found that the evidence presented at the hearing established that the poll workers took their required oath and signed an "oath sheet" that was supposed to be returned to the County Clerk's office. There was testimony by the County Clerk, John A. Turner, that the oath sheet was misplaced, but that his investigation revealed that all poll workers took the required oath. Judge Witten contends that, because the oath sheet could not be found, all of the votes in the precinct should be set aside.

In rejecting Judge Witten's argument, the Special Court cited to the decision in *State ex rel. Revercomb v. Sizemore*, 124 W. Va. 700, 22 S.E.2d 296 (1942), as support for its decision. In *Revercomb*, the petitioner was the winning candidate in the primary election for the Republican nomination for the United States Senate. The petitioner filed a petition for a writ of mandamus in this Court to compel the board of canvassers of Clay County to reinstate all the votes cast in seven precincts in that county. The votes in the seven precincts were rejected because poll workers in the precincts did not properly take the oath for election officers. This Court granted the requested writ based upon the following reasoning:

> The votes cast in the seven questioned precincts were fairly and
> correctly counted and tabulated upon the recount and no fraud

16

or misconduct has been shown. To exclude such returns from the canvass of the vote cast in said election in Clay County would, in effect, disfranchise the voters in such precincts, solely because of the participation of election officers, some of whom were not properly sworn and others who did not properly subscribe to the oath taken . . . . We do not believe that an election should be vitiated by reason of the fact that election officers acted, under color of authority, without the required qualifications as to taking and subscribing the statutory oath, where no fraud or misconduct is imputed.

*Revercomb*, 124 W. Va. at 703, 22 S.E.2d at 298 (citations omitted). This Court went on to set out the following general principle of law in the single Syllabus of *Revercomb*:

In the absence of fraud or misconduct preventing a free expression of the will of the voters, failure of commissioners of election and poll clerks to take and subscribe the oaths in strict compliance with [the law], will not vitiate an election conducted by such officers.[12]

124 W. Va. 700, 22 S.E.2d 296 (footnote added). *See State ex rel. Watts v. Kelly*, 140 W. Va. 177, 83 S.E.2d 465 (1954) (applying *Revercomb*).

As pointed out in the brief of Mr. Butcher, the decision in *Revercomb* is controlling in this case. Even if the record had shown that the poll workers failed to properly take the required oath, *Revercomb* would not permit rejecting the ballots cast in the Sharples Precinct merely because of this defect. However, we need not go that far, because the only evidence on this issue proves that the poll workers did, in fact, take the required oath.

---

[12]The Syllabus point referred to a now-repealed statute.

17

Therefore, we find no reason to disturb the Special Court's ruling on the votes cast at the Sharples Precinct.

### *C. Lane Precinct*

The final issue raised by Judge Witten is that the wife of Mr. Butcher was unlawfully campaigning in a restricted area at the Lane Precinct.[13]  Consequently, Judge Witten argued before the Special Court that all of the votes cast in the Lane Precinct should be rejected.[14]  We need not belabor this argument.[15]

It is clear that W. Va. Code § 3-1-37(a) (1999) (Repl. Vol. 2013) prohibits campaigning or electioneering within 300 feet of a polling place when the polls are open.[16] This statute states the following:

> Except as otherwise provided in this section, no person, other than the election officers and voters going to the election room

---

[13]The record indicates that another person also was campaigning in the same area, but for a nonjudicial office.

[14]In his brief before this Court, Judge Witten appears to argue, as a remedy, that the election should be voided, and a new election ordered.

[15]The record indicates that Judge Witten received 194 votes from the Lane Precinct, and Mr. Butcher received 274 votes.

[16]"Electioneering means anything which aids or promotes the success or defeat of any candidate or ballot issue, such as displaying of signs, distribution of campaign literature, cards or handbills, or the solicitation of voters for or against any candidate or question on the ballot." 153 W. Va. C.S.R. § 8-2 (1985).

18

to vote and returning therefrom, may be or remain within three hundred feet of the outside entrance to the building housing the polling place while the polls are open. This subsection does not apply to persons who reside or conduct business within such distance of the entrance to the building housing the polling place, while in the discharge of their legitimate business, or to persons whose business requires them to pass and repass within three hundred feet of such entrance.

W. Va. Code § 3-1-37(a). This statute is clear in setting out the conduct it prohibits. *See* Syl. pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."). The decision of the Special Court set out the following findings on how polling workers carry out the intent of W. Va. Code § 3-1-37(a):

> To maintain the integrity of each polling place, election day workers are provided a precinct kit to set up each voting precinct in Logan County. The kit includes a 100-foot string which is intended to be extended three times from the door of the polling place. This measurement establishes the restricted "no electioneering" area from the polling place. Signs are to be erected by poll workers clearly marking the restricted area in which loitering and electioneering is proscribed. Both the training video and written manual produced by the West Virginia Secretary of State and used to train Logan County election workers instruct prospective poll workers on the measurement of the restricted area. In addition to the mandatory duty to properly establish the "no electioneering" zone, it is the further responsibility of election officials at the polling place to remove any unauthorized persons who may be present in the restricted area.

*See* 153 W. Va. C.S.R. § 8-3.3.2 (1985) ("The officers of election shall, prior to the opening of the polls, measure from the outside door of the building housing the voting place along

access walkways and/or roadways to determine the three hundred foot (300') distance and shall clearly mark the boundary of the restricted area in at least two (2) places.").

The Special Court found that the poll workers at the Lane Precinct erroneously cordoned off an area of about 225 feet and designated it with signs as the "No Electioneering" area. This was not in compliance with the 300 foot requirement of W. Va. Code § 3-1-37(a). The evidence at the hearing established that Mr. Butcher's wife engaged in campaigning activity outside the area cordoned off as the "No Electioneering" area. In fact, the parties stipulated that Mrs. Butcher "never crossed the marked 'No electioneering' boundary." The parties also stipulated that there was "no evidence that any of the poll workers at the [Lane] precinct were engaged in any kind of fraud or intentional misconduct." In view of this evidence, the majority of the Special Court held as follows:

> The majority of the special Court concludes that the Lane poll workers' failure to correctly establish the appropriate size of the restricted area around the Lane precinct that resulted in electioneering activity within 300 feet of the Lane polling place was not misconduct which warrants vitiation of the election results at the Lane precinct. An act of electioneering within the restricted area near voting polls can be regulated by imposition of the criminal penalties contained in W. Va. Code § 3-9-6. The majority would not disenfranchise the voters who cast 468 votes in the Lane precinct when the electioneering at issue occurred outside of the boundaries of the incorrectly drawn, restricted area.

We agree with the majority of the Special Court. The position advocated by Judge Witten, and the dissenting member of the Special Court, Mr. Counts, would require that voters carry tape measures to voting places to make certain the "No Electioneering" signs that they saw were in fact 300 feet away from the polling place.[17] Mrs. Butcher did nothing intentionally wrong when she stood behind the "No Electioneering" signs and advocated enthusiastically for her spouse's campaign. *See Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994) ("In short, Appellee did not violate § 2031–a because the School District did not provide the notice required by that statute. Holding otherwise would infringe upon Appellee's First Amendment (and statutory) right to electioneer 100 feet from the polling place and make possible the selective enforcement of the prohibition on electioneering." (footnote omitted)). The blame in this situation rested exclusively with the poll workers who, through the erroneous placement of the signs, told Mrs. Butcher and all other voters that it was lawful to campaign immediately behind those signs. In the final analysis, and we so

---

[17]Judge Witten and Mr. Counts, in his dissent, cite the decision in *Ellis v. Meeks*, 957 S.W.2d 213 (Ky. 1997), as authority for invalidating the votes in the Lane Precinct. The decision in *Ellis* is distinguishable because it did not involve polling workers placing "No Electioneering" signs at the wrong distance. Judge Witten also cited, without any discussion, three cases that have no application to the issue of electioneering near polls. *See Brooks v. Crum*, 158 W. Va. 882, 216 S.E.2d 220 (1975) (involving improperly assisting voters to cast vote and voting after poll closed); *State ex rel. Patrick v. County Court of Hancock Cty.*, 152 W. Va. 592, 165 S.E.2d 822 (1969) (addressing whether ballots signed by correct poll clerks under former version of W. Va. Code § 3-6-7 that required voiding ballots not signed by poll clerks; remedy removed from statute in 2003); *State ex rel. Dotson v. VanMeter*, 151 W. Va. 56, 150 S.E.2d 604 (1966) (addressing former version of W. Va. Code § 3-6-7 requiring voiding ballots not signed by poll clerks; remedy removed from statute in 2003).

hold, the voters of this State cannot be disenfranchised or criminally penalized because of errors by polling officials in demarcating "No Electioneering" zones at polling places.

## IV.

## CONCLUSION

In view of the foregoing, the decision of the Special Court dated October 17, 2016, denying relief to Judge Witten, is affirmed.

Affirmed.