539 S.E.2d 770

**Jennings MILLER, Petitioner Below, Appellee,**

v.

**The COUNTY COMMISSION OF BOONE COUNTY, West Virginia; Gene Kuhn, President; Gordon Eversole, Commissioner; J.M. "Mickey" Protan, Commissioner, Respondents Below,**

v.

**Roger L. Weaver, Intervenor and Counter Petitioner Below, Appellant.**

No. 28199.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 6, 2000.

Decided Oct. 2, 2000.

Brent W. Wolfinbarger, Esquire, Charleston, West Virginia, Attorney for Appellee Miller.

Richard Riffe, Prosecuting Attorney, Madison, West Virginia, Attorney for the Boone County Commission.

John R. Mitchell, Sr., Esquire, E. Dixon Ericson, Esquire, John R. Mitchell, Jr., Esquire, Charleston, West Virginia, Attorneys for Appellant Weaver.

SCOTT, Justice:

This case is before the Court upon the appeal of Roger L. Weaver from the July 20, 2000, final order of the Circuit Court of Boone County, West Virginia, awarding a writ of prohibition which prohibited the County Commission of Boone County ("County Commission" and "Board of Canvassers") from hearing the Appellant's protest of the results of the May 2000 primary election for Assessor of Boone County ("Assessor").[1] The circuit court ruled that the Appellant's failure to file a petition for a recount of the votes before the Board of Canvassers precluded the Appellant from contesting the election results. Upon a review of the parties' briefs and arguments, we affirm the lower court's decision to issue a writ of prohibition.[2]

## I.  FACTS

On Tuesday, May 9, 2000, a primary election was held in Boone County. The Appellee, Jennings Miller, and the Appellant opposed each other for the Democratic nomination for the Assessor. The Appellee was initially declared the winner of the election. On Friday, May 12, 2000, the County Commission, sitting as the Board of Canvassers, commenced its canvass of the

---

1. The circuit court also denied the Appellant's request for a writ of mandamus in which the Appellant sought to compel the County Commission, sitting as the Board of Canvassers, to recount the election returns. The Appellant has specifically withdrawn any alleged errors and/or arguments concerning the denial of the writ of mandamus on appeal.

2. On September 7, 2000, this Court issued a per curiam order reflecting this affirmance of the lower court's decision and noting that this opinion would follow.

votes. The primary election results were declared on May 22, 2000, at or around 5:30 p.m. The final results for the Assessor's race were as follows: Jennings Miller received 3,174 votes and Roger L. Weaver received 3,158 votes.

On May 25, 2000, at around 1:51 p.m., the Appellant filed a notice with the Office of the Clerk of the County Commission demanding a recount of the election results. After receiving the notice, the Secretary of State's office was consulted, because the Appellant's request for a recount was filed outside the forty-eight hour deadline for filing such requests.[3] See W. Va.Code § 3–6–9(a) (1999). Mary Ratliff, an employee in the Secretary of State's office, issued an opinion letter wherein she concluded that the County Commission may not conduct any recount requested after the expiration of the forty-eight hour deadline.

It was not until May 30, 2000, that the Board of Canvassers issued an order certifying the results of the May 9, 2000, primary election, which indicated that the Appellee was the winner and denied the recount demanded by the Appellant.[4] On June 1, 2000, the Appellant filed a notice of contest, alleging that: 1) the County Commission erroneously failed to grant the Appellant's motion for a recount; 2) the Board of Canvassers should have counted sixty-six votes specifically listed by the Appellant; and 3) the Board of Canvassers should have challenged some thirty-six absentee votes which were counted.[5] At no time did the Appellant contest the legality of the election or the qualification or eligibility of the person elected to hold the subject office. See W. Va.Code § 3–7–6 (1999).

Following the Appellant's notice of contest, on June 12, 2000, the County Commission, through written notice, stated that it intended to hear the election contest sitting as a Board of Contest. The proceeding was scheduled for June 19, 2000. On June 15, 2000, the Appellee filed a petition for writ of prohibition with the circuit court, which was ultimately granted and is the subject of the present appeal.

## II. ISSUE

The sole issue before the Court is whether a candidate in an election must demand a recount of the election results before the County Commission, acting as the Board of Canvassers, as a prerequisite for filing a petition contesting the election. See W. Va. Code § 3–6–9 and § 3–7–6. The Appellant argues that an election recount and an election contest are distinctively different. Further, the Appellant maintains that there is no justification for the requirement that a recount must be held before there is jurisdiction to hold a contest, because there is no interdependency between the statute providing for a recount and the statute providing for an election contest. See id. The Appellee, however, argues that the Appellant has no right to contest the primary election, and the County Commission has no jurisdiction to conduct a contest, because no recount of such election was requested in a timely manner pursuant to West Virginia Code § 3–6–9.

3. The Appellee's response indicates that the Appellant thought he had until the end of business on May 25, 2000, to request a recount. The Appellant's petition indicates that

> [b]etween the time that the election results were declared on May 22, 2000 and the time of the filing of Weaver's request for a recount at 1:51 p.m. on May 25, 2000, Weaver or his assistant had been assured by a majority of the County Commission of Boone County, that he could file his petition for a recount at any time before 4:00 p.m. on the afternoon of May 25, 2000.

The circuit court found that the Appellant "was expressly relying upon the unequivacle [sic] statements of the Board of Canvassers[]" at the time he filed his request. These facts, however,

do not impact this Court's decision as they relate only to the Appellant's mandamus action which the Appellant has expressly withdrawn for purposes of this appeal.

4. This order should have been issued within forty-eight hours after the canvass was concluded pursuant to statute. See W. Va.Code § 3–6–9.

5. We are perplexed by the Appellant's assertion that the Board of Canvassers should have challenged certain absentee ballots which were counted. It is not the duty of the Board of Canvassers to challenge ballots, it is the Board's duty either to count the challenged ballot or to refuse to count the challenged ballot, depending upon its ruling on the validity of the challenge.

## III. DISCUSSION

■ This Court has never addressed whether a candidate must demand a recount pursuant to West Virginia Code § 3–6–9 as a prerequisite to filing an election contest. *See* W. Va.Code § 3–7–6. In order to resolve this issue, we first examine the pertinent statutes. West Virginia Code § 3–6–9 governs the procedure for recounting the votes from an election and provides, in relevant part:

> The commissioners of the county commission shall be ex officio a board of canvassers, ... in ascertaining and declaring the results of every election in their respective counties....
>
> (a) *Within the forty-eight-hour period, a candidate voted for at the election may demand the board to open and examine any of the sealed packages of ballots, and recount them;* but in such case they shall seal the ballots again, along with the envelope above named, and the clerk of the county commission and each member of the board shall write his name across the places where it is sealed, and endorse in ink, on the outside: "Ballots of the election held at precinct No ..., in the district of .........., and county of .........., on the .......... day of .........." In computing the forty-eight-hour period as used in this section, Saturdays, Sundays and legal holidays shall be excluded: Provided, *That at the end of the forty-eight-hour period, an order shall be entered certifying all election results except for those offices in which a recount has been demanded.*
>
> (b) *If a recount has been demanded, the board shall have an additional twenty-four hours after the end of the forty-eight-hour period in which to send notice to all candidates who filed for the office in which a recount has been demanded, of the date, time and place where the board will convene to commence the recount....*

*Id.* (emphasis added).

West Virginia Code § 3–7–6 governs the procedure for contesting election results and provides as follows:

> In all cases of contested elections, the county commission shall be the judge of the election, qualifications and returns of their own members and of all county and district officers: Provided, That a member of the county commission whose election is being contested may not participate in judging the election, qualifications and returns.
>
> *A person intending to contest the election of another to any county or district office, including judge of any criminal, intermediate, common pleas or other inferior court, or any office that shall hereafter be created to be filled by the voters of the county or of any magisterial or other district therein, shall, within ten days after the result of the election is declared, give the contestee notice in writing of such intention, and a list of the votes he will dispute, with the objections to each, and of the votes rejected for which he will contend. If the contestant objects to the legality of the election, or the qualification of the person returned as elected, the notice shall set forth the facts on which such objection is founded.* The person whose election is so contested shall, within ten days after receiving such notice, deliver to the contestant a like list of the votes he will dispute, with the objections to each, and of the rejected votes for which he will contend; and, if he has any objection to the qualification of the contestant, he shall specify in writing the facts on which the objection is founded. Each party shall append to his notice an affidavit that he verily believes the matters and things set forth to be true. If new facts be discovered by either party after he has given notice as aforesaid, he may, within ten days after such discovery, give an additional notice to his adversary, with the specifications and affidavit prescribed in this section.

*Id.* (emphasis added).

■ In determining what interdependency, if any, exists between the above-mentioned statutes, we are mindful of the following well-established principle of statutory interpretation:

" 'Statutes in pari materia, must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect.' Point 3., Syllabus, *State ex rel. Graney v. Sims*, 144 W.Va. 72[, 105 S.E.2d 886 (1958) ]. Syl. pt. 1, *State ex rel. Slatton v. Boles*, 147 W.Va. 674, 130 S.E.2d 192 (1963)." Syl. pt. 1, *Transamerica Com. Fin. v. Blueville Bank*, 190 W.Va. 474, 438 S.E.2d 817 (1993).

Syl. Pt. 2, *Beckley v. Kirk*, 193 W.Va. 258, 455 S.E.2d 817 (1995). In is unquestionable that the above-mentioned statutory provisions were enacted for the primary purpose of affording procedures to dispute the results of elections. The fact that the relevant statutes establish two separate procedures does not negate the fact that these statutory provisions must be read in pari materia as both statutes relate to the same common purpose of resolving election result controversies.

In prior cases we have discussed the relevant statutory provisions. In *Booth v. Board of Ballot Commissioners*, 156 W.Va. 657, 196 S.E.2d 299 (1972), this Court set forth the general differences between an election recount and an election contest as follows:

A contest and a recount ... are very distinct procedures under our election law. The county court, sitting as a Board of Canvassers in a recount for a primary election, may only do that which the statute authorizes it to do. *State ex rel. Thompson v. Fry*, 137 W.Va. 321, 71 S.E.2d 449 (1952)....

Cases construing the duties of a board of canvassers say in effect that the board may only consider matters apparent on the face of the ballot and matters apparent to the personal knowledge of election officers and officials and those casting ballots. In other words, only matters patent and intrinsic to the ballot and counting procedures are proper subjects for review and determination by the board of canvassers. *State ex rel. Patrick v. County Court*, 152 W.Va. 592, 165 S.E.2d 822 (1969); *State ex rel. Ellis v. County Court*, 153 W.Va. 45, 167 S.E.2d 284 (1969), holding that the board of canvassers may not consider or determine cases of fraud, intimidation or illegality in an election, the eligibility of a candidate, or irregularities discoverable in the course of a recount which can be established only by evidence extrinsic to the election returns.

On the other hand, the county court sitting as an election contest court, may take evidence, consider and make determination of matters extrinsic to the election returns. Sitting as an election court in a contest pursuant to *Code*, 1931, 3–5–20, as amended, and *Code*, 1931, 3–7–7 and 8, as amended, the election court may determine the legality of votes cast. *See Terry v. Sencindiver, supra* [153 W.Va. 651, 171 S.E.2d 480 (1969) ]; *State ex rel. Mahan v. Claypool*, 97 W.Va. 670, 125 S.E. 810 (1924); *Burke v. Supervisors of Monroe County*, 4 W.Va. 371 (1870).

156 W.Va. at 672–73, 196 S.E.2d at 309–310; *see* Syl. Pt. 2, *Reynolds v. Board of Canvassers*, 117 W.Va. 770, 188 S.E. 229 (1936) ("The statutory law contemplates that an election recount and contest shall be separate proceedings. The former must terminate and the result be declared before the latter may commence. The informal conversion by opposing candidates of a recount into a quasi contest without observing the procedure for contests provided in Code, 3–9–2, is disapproved."); *Manchin v. Dunfee*, 174 W.Va. 532, 535, 327 S.E.2d 710, 712 (1984)("An election contest is a separate proceeding from a canvass or a recount and is usually pursued following the completion of a requested recount.").

We further defined the limitations of an election recount in syllabus points three and four of *State ex rel. Bumgardner v. Mills*, 132 W.Va. 580, 53 S.E.2d 416 (1949), where we held that:

Upon a recount of ballots cast at an election, a board of canvassers is without authority to consider or determine matters not shown by the election returns or by relevant evidence of the commissioners, the poll clerks, or other persons present at such election respecting such returns, or which may be established only by evidence extrinsic to the election returns.

Upon a recount of election ballots a board of canvassers may not consider or

determine questions of fraud, intimidation or illegality in an election, the eligibility of a candidate, the validity of the appointment of precinct election officers, the qualifications of such elections officers, or irregularities discoverable in the course of a recount which can be established only by evidence extrinsic to the election returns. *Id.* at 581, 53 S.E.2d at 420–21, Syl. Pts. 3 and 4.

We have also previously recognized that the limited function of an election recount to decide matters which can be resolved intrinsically from the plain face of the actual ballot serves to "lay the basis for a[n] [election] contest[,]" because there are "many irregularities and illegalities discoverable in the course of a recount that cannot be corrected in that proceeding." *Brawley v. County Court,* 117 W.Va. 691, 694, 187 S.E. 417, 418 (1936). Another important facet of a recount is that it places all candidates who filed for the office in which the recount has been demanded on notice that problems may exist with specific votes cast in the election. *See* W. Va.Code § 3–6–9(a). Thus, where a candidate is disputing certain votes or ballots cast in an election, a recount gives all interested candidates in that particular race an opportunity: 1) to observe the manner in which the Board of Canvassers conducts the recount; 2) "to notify the board, in writing, of their intention to preserve their right to demand a recount of precincts not requested to be recounted by the candidate originally requesting a recount of ballots cast[;]" and 3) to identify votes cast which may be challenged as irregular or illegal in an election contest. *See* W. Va.Code § 3–6–9(b).

Inherent in the recount procedure is the concept of fairness to all interested candidates in an election. The recount procedure is the only mechanism available in an election dispute which gives the interested candidates a chance to identify and define problematic votes, thereby establishing the parameters for an election contest. The elimination of this procedure where specific votes are in dispute would necessarily result in a lopsided and unfair playing field upon which to base an election contest. It is, therefore, evident that where the challenge to election results stems from specific votes cast, a recount plays an integral and indispensable role tantamount to fundamental principles of due process, which cannot be ignored or omitted. To allow a candidate in such a case to bypass the recount procedure and proceed directly to an election contest would thwart the legislative purpose of the recount statute and essentially render such statute irrelevant. *See* W. Va.Code § 3–6–9 and § 3–7–6.

█ In contrast, the purpose of an election contest is to resolve those disputes emanating from an election which concern not only the actual votes cast, but also include such matters as the legality of the election and the qualification of the person elected. *See* W. Va.Code § 3–7–6. For instance, we held in syllabus point eight of *State ex rel. Patrick v. County Court,* 152 W.Va. 592, 165 S.E.2d 822 (1969), that "[e]vidence of fraud or any other like matter which involves extrinsic evidence is not admissible before a board of canvassers on a recount and can be presented only at election contest proceedings." *Id.* at 594, 165 S.E.2d at 824, Syl. Pt. 8. Thus, unlike an election recount, a county commission, acting as a judge of an election contest, may take the testimony from subpoenaed witnesses as well as other relevant extrinsic evidence, before deciding the result of an election. *See* W. Va.Code § 3–7–7.

█ Accordingly, we hold that where a candidate seeks to contest specific ballots cast in an election pursuant to the provisions of West Virginia Code § 3–7–6, he must first demand that the Board of Canvassers conduct a recount of the ballots pursuant to the provisions of West Virginia Code § 3–6–9. Where, however, a candidate seeks to contest only such matters as fraud, an elected candidate's eligibility, or the legality of the election, the candidate may proceed directly with an election contest pursuant to the provisions of West Virginia Code § 3–7–6, thereby omitting the recount procedure set forth in West Virginia Code § 3–6–9, provided that any recount proceeding which was otherwise initiated has terminated.

In the instant case, it is clear that the Appellant never sought to challenge the legality of the election, the elected candidate's

eligibility, or any of those matters which can be resolved only through the admission of extrinsic evidence in an election contest. To the contrary, the Appellant, in his petition for election contest, protested the action of the Board of Canvassers in counting or refusing to count certain votes cast in the primary. For this very reason, the Appellant was bound by statute to demand a recount of the election as a prerequisite to proceeding to an election contest. *See* W. Va.Code § 3–6–9 and § 3–7–6. The Appellant's failure to demand a recount in a timely fashion precluded his contest of the election on the issue of the validity of the ballots under the provisions of West Virginia Code § 3–7–6.

■■■ " 'Prohibition lies only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari.' Syl. Pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953)." Syl. Pt. 3, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). In order to determine whether the writ of prohibition was properly granted we apply the following standard of review:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ

of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Id.* at 14–15, 483 S.E.2d at 14–15, Syl. Pt. 4. Having established that West Virginia Code § 3–6–9 must be read in pari materia with West Virginia Code § 3–7–6, it is clear that, in the instant case, had the County Commission proceeded with deciding the election contest on the sole issue of the validity of the ballots, it would have been acting in contravention of clear statutory mandate that a recount occur first. *See* W. Va.Code § 3–6–9 and § 3–7–6. Therefore, the trial court properly issued the writ of prohibition.

Affirmed.

Justice McGRAW dissents.