IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 19-1018

_____

FILED
June 15, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HARDWICK SMITH JOHNSON, CHARLOTTE WARD THOMPSON,
MARJORIE FLYNN YOST, AND BARBARA HUMES,
Defendants Below, Petitioners

v.

NANCY SINGLETON CASE AND DEBORAH A. MCGEE,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Jefferson County
Honorable Debra McLaughlin, Judge
Civil Action No. 19-P-136

AFFIRMED, IN PART, REVERSED, IN PART,
AND REMANDED WITH DIRECTIONS

_____

Submitted: May 19, 2020
Filed: June 15, 2020

J. Zak Richie, Esq.
Ryan McCune Donovan, Esq.
Hissam Forman Donovan
    Richie, PLLC
Charleston West Virginia
Attorneys for Petitioners

Gregory A. Bailey, Esq.
J. Daniel Kirkland, Esq.
Arnold & Bailey, PLLC
Charles Town, West Virginia
Attorneys for Respondents

Patrick Morrisey, Esq.
Attorney General
Curtis R. A. Capehart, Esq.
Deputy Attorney General
Thomas T. Lampman, Esq.
Assistant Solicitor General
Charleston, West Virginia
Attorneys for Amicus Curiae,
     Mac Warner, Secretary of State of WV


JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICE WORKMAN did not participate in the decision in this case.

**SYLLABUS BY THE COURT**

1. "While the appellate court may examine the record in the review of election contests in order to reach an independent conclusion, it merely determines whether the conclusions of law are warranted by the findings of fact, and it will not, as a general rule, disturb findings of fact on conflicting evidence unless such findings are manifestly wrong or against the weight of the evidence." Syl. Pt. 6, *Brooks v. Crum*, 158 W.Va. 882, 216 S.E.2d 220 (1975).

2. "The statutory law contemplates that an election recount and contest shall be separate proceedings. The former must terminate and the result be declared before the latter may commence." Syl. Pt. 2, in part, *Reynolds v. Bd. of Canvassers of Harrison Cty.*, 117 W.Va. 770, 188 S.E. 229 (1936).

3. "Where a candidate seeks to contest specific ballots cast in an election pursuant to the provisions of West Virginia Code § 3-7-6 (1999), he must first demand that the Board of Canvassers conduct a recount of the ballots pursuant to the provisions of West Virginia Code § 3-6-9 (1999). Where, however, a candidate seeks to contest only such matters as fraud, an elected candidate's eligibility, or the legality of the election, the candidate may proceed directly with an election contest pursuant to the provisions of West Virginia Code § 3-7-6, thereby omitting the recount procedure set forth in West Virginia Code § 3-6-9, provided that any recount proceeding which was otherwise initiated has

terminated." Syl. Pt. 5, *Miller v. Cty. Comm'n of Boone County,* 208 W.Va. 263, 539 S.E.2d 770 (2000).

4. "The rule of necessity is an exception to the disqualification of a judge. It allows a judge who is otherwise disqualified to handle the case to preside if there is no provision that allows another judge to hear the matter." Syl. Pt. 7, *State ex rel. Brown v. Dietrick*, 191 W.Va. 169, 444 S.E.2d 47 (1994).

5. "The rule of necessity is an exception to the general rule precluding a disqualified judge from hearing a matter. Therefore, it is strictly construed and applied only when there is no other person having jurisdiction to handle the matter that can be brought in to hear it." Syl. Pt. 8, *State ex rel. Brown v. Dietrick*, 191 W.Va. 169, 444 S.E.2d 47 (1994).

**HUTCHISON, Justice:**

This case is before this Court upon an appeal of a November 6, 2019, order of the Circuit Court of Jefferson County that reversed, in part, an order declaring the results for a town council election that was entered by the Harpers Ferry Election Contest Tribunal ("Tribunal") following an election contest trial. The circuit court found that the Tribunal erred by concluding that four provisional ballots cast during the Harper Ferry municipal election on June 11, 2019, should not be counted. In this appeal, the petitioners, Hardwick Smith Johnson, Charlotte Ward Thompson, Marjorie Flynn Yost, and Barbara Humes, who are the contestees,[1] argue that the circuit court erroneously substituted its view of the evidence to find that the four provisional ballots should have been counted. The respondents, Nancy Singleton Case and Deborah A. McGee, who are the contesters, assert that the circuit court's order should be affirmed with respect to the finding regarding the provisional ballots. However, the respondents cross-assign error[2] to the circuit court's decision to uphold the Tribunal's conclusion that respondent Case lacked standing to participate in the election contest because she failed to post the requisite bond for the recount of the votes. The respondents also contend the circuit court erred by failing to rule that two town council members were disqualified from serving on the Tribunal.[3]

---

[1] Two other contestees, Christian Pechuekonis and Jay Premack, who won seats on the town council, did not respond to the Notice of Contest and are not parties in this appeal.

[2] *See* W.Va. R. App. Proc. 10(f).

[3] An amicus brief was filed by Mac Warner, the West Virginia Secretary of State, on behalf of the respondents.

Having considered the parties' briefs and oral arguments, the submitted record, and pertinent authorities, we affirm, in part, and reverse, in part, the circuit court's order and remand this case for entry of an order consistent with this opinion.

## I. Facts and Procedural Background

The town of Harpers Ferry held a municipal election on June 11, 2019. Among the offices subject to election were five at-large seats on the Harpers Ferry Town Council. The candidates for the town council seats and the number of votes recorded for each on election day were as follows: Barbara Humes, 91 votes; Jay Premack, 87 votes; Hardwick Johnson, 85 votes; Christian Pechuekonis, 84 votes; Charlotte Thompson, 84 votes; Nancy Singleton Case, 82 votes; Deborah McGee, 81 votes; Marjorie Flynn Yost, 81 votes; and Leah Howell, 15 votes. As the vote count illustrates, respondent McGee lost by three votes and respondent Case lost by two votes.[4] On June 19, 2019, respondent McGee submitted a letter asking for a recount and tendered a check for the $175.00 bond that had been set by the Board of Canvassers to cover the cost of any recount. According to respondent Case, she also requested a recount by email that same day but did not post the bond.[5]

---

[4] Although Marjorie Flinn Yost also lost the election, she did not contest the results. Consequently, she was named as a contestee and is a petitioner herein.

[5] Respondent Case testified during the proceeding below that she sent an email requesting a recount. However, it appears that the email was never produced, and it is not part of the record submitted to this Court. Respondent Case never disputed the fact that she did not post a bond. She testified that she was out of town during the forty-eight-hour

The recount was held on June 26, 2019, and there was no change in the result. Only the ballots previously accepted by the Board of Canvassers were recounted; no provisional ballots were considered. Thereafter, the election results were certified, and on June 29, 2019, the five incoming members of the town council, including petitioners Johnson, Thompson, and Humes, were sworn in.

On July 8, 2019, respondents McGee and Case timely filed a joint petition to contest the election results alleging that five citizens of Harpers Ferry were denied the right to vote based upon erroneous records that indicated that they did not reside in Harpers Ferry. These citizens, Linda McCarty, George McCarty, Adam Hutton, Leah Howell,[6] and Jane Mumaw, voted by provisional ballot on election day. Subsequently, the petitioners abandoned their claim with respect to Ms. Mumaw upon receipt of information indicating she was registered to vote in another county. The other four provisional voters resided on Washington Street in Harpers Ferry, and the respondents asserted that their votes should have been counted. The provisional voters had each registered to vote through the West Virginia Department of Motor Vehicles ("DMV"),[7] which had listed their street address as

---

period for filing the request for a recount and was told that the check submitted by respondent McGee to cover the bond was all that was needed for the recount.

[6] Ms. Howell was also a candidate for the town council seats.

[7] *See* W.Va. Code § 3-2-11 (2019) (providing for voter registration in conjunction with driver licensing).

"*West* Washington Street," which is located in the neighboring municipality of Bolivar. Consequently, their names did not appear in the Harpers Ferry poll book on election day.

An election contest trial was held on August 24, 2019. Pursuant to West Virginia Code § 3-7-6 (2002), "the governing body of the municipality is the judge of any contest of a municipal election."[8] The codified ordinances of Harpers Ferry provide that the town council is "the governing body of the town" and consists of "five Councilmembers, plus the Mayor and the Recorder."[9] Thus, the members of the Tribunal were the mayor, Wayne Bishop; the recorder, Kevin Carden; and newly elected council members, Barbara Humes, Hardwick Johnson, Charlotte Thompson, and Jay Premack. Council member Christian Pechuekonis declined to participate in the election contest. During the proceeding, the respondents objected to petitioners Johnson and Thompson serving on the Tribunal because their election to the town council was being contested. The Tribunal concluded, however, that it "ha[d] no legal authority to compel any one or more of its members to disqualify themselves from participating in any business that comes before the Town Council" and that "[d]isqualification is determined and undertaken on an individual basis."

---

[8] *See also* Syl. Pt. 1, *Evans v. Charles*, 133 W.Va. 463, 56 S.E.2d 880 (1949) ("The jurisdiction of the common council of a municipality incorporated under Article 2, Chapter 8, Code, to hear and decide a contested election involving the selection of municipal officers is original and exclusive.").

[9] *See* Harpers Ferry Codified Ordinances § 111.01 (2011); § 111.02 (2016).

4

During the election contest trial, the respondents called three of the provisional voters—Linda McCarty, George McCarty, and Adam Hutton—to testify along with Nikki Painter, Chief Deputy Clerk of Elections for the Jefferson County Voter Registration and Elections Office. The McCartys testified that when they registered to vote at the DMV, they were told that their street address needed to be identified as "West Washington Street" as opposed to just "Washington Street" because that was the way their address appeared in the DMV's electronic system. The McCartys further testified that they explained to the DMV employee that they did not live on "West Washington Street" but their efforts to have the correct address put into the system were unsuccessful. The McCartys stated that they did not understand the importance of the address distinction until they attempted to vote during the June 11, 2019, election and were told that they were not listed in the Harpers Ferry poll book. Consequently, they were required to cast provisional ballots.

Similarly, Adam Hutton testified that he used "900 West Washington Street" when he registered to vote at the DMV because that was the address assigned to him by the U.S. Postal Service. Like the McCartys, Mr. Hutton only became aware that he was listed in the poll book for Bolivar, rather than Harpers Ferry, when he attempted to vote on June 11, 2019. He was also required to cast a provisional ballot.

Ms. Painter testified that when the matter was brought to her attention, she investigated to determine why the provisional voters were listed in the poll book for

5

Bolivar, the neighboring municipality.[10]  She explained that the "West" designation in the provisional voters' addresses was a technical error that caused her to mistakenly list the provisional voters in the Bolivar poll book.  Ms. Painter testified that all four provisional voters do in fact live in Harpers Ferry, and they should have been listed in the Harpers Ferry poll book.  She indicated that she had corrected the official county voting records to properly reflect that all four provisional voters are Harpers Ferry residents.

Following the trial, the Tribunal, by a vote of four-to-two,[11] entered an order on September 11, 2019, declining to count the provisional ballots and refusing to modify the election certification.  The Tribunal also found that respondent Case lacked standing to participate in the election contest because she failed to post the bond required for the recount of the votes.  The respondents timely appealed the decision to the circuit court.[12]  Following oral arguments, the circuit court entered its November 6, 2019, order reversing the Tribunal's decision to not count the provisional ballots.  However, the circuit court

---

[10] At the outset of her testimony, Ms. Painter explained that her job duties included registering voters and handling "every aspect of the election from the Clerk's prospective, including preparing the poll books."  She further explained, "I work with municipalities to supply their poll books and to provide whatever other supplies that they would need to borrow from the county."

[11] The majority included the mayor and council members Humes, Johnson, and Thompson.  Recorder Kevin Carden and council member Jay Premack dissented from the decision.

[12] *See* W.Va. Code § 3-7-7 (1963) (allowing for appeal of election contest decision to circuit court).

6

upheld the Tribunal's decision that respondent Case lacked standing to participate in the election contest because she failed to post the requisite bond within forty-eight hours of filing her request for a recount. Having reached the merits of the case, the circuit court did not address the respondents' argument that certain members of the Tribunal were disqualified because their election to the town council was being contested. Upon entry of the circuit court's order, this appeal followed.

## II.  Standard of Review

The standard of review for election contests has long been established. In syllabus point six of *Brooks v. Crum*, 158 W.Va. 882, 216 S.E.2d 220 (1975), this Court held:

> While the appellate court may examine the record in the review of election contests in order to reach an independent conclusion, it merely determines whether the conclusions of law are warranted by the findings of fact, and it will not, as a general rule, disturb findings of fact on conflicting evidence unless such findings are manifestly wrong or against the weight of the evidence.

However, with respect to questions of law that arise in election contests cases, our review is de novo. *State ex rel. Bowling v. Greenbrier Cty. Comm'n*, 212 W.Va. 647, 650, 575 S.E.2d 257, 260 (2002). With these standards in mind, we consider the parties' arguments.

## III. Discussion

The primary assignment of error in this case concerns whether the circuit court erred when it found that four provisional ballots cast during the 2019 Harpers Ferry municipal election should have been counted. We begin our analysis

> ever mindful of the paramount principle that election laws are to be construed in favor of enfranchisement, not disenfranchisement. *See State ex rel. Sowards v. County Comm'n of Lincoln County*, 196 W.Va. 739, 750, 474 S.E.2d 919, 930 (1996). *See Afran v. County of Somerset,* 244 N.J.Super. 229, 232, 581 A.2d 1359, 1361 (1990) ("[E]lection laws must be liberally construed to effectuate the overriding public policy in favor of the enfranchisement of voters."); *see also James Appeal*, 377 Pa. 405, 407, 105 A.2d 64, 65 (1954) (In construing election laws, while courts must strictly enforce all provisions to prevent fraud, an overriding concern must be to be flexible in order to favor the right to vote.).

*State ex rel. Bowling,* 212 W.Va. at 649, 575 S.E.2d at 259. In other words, "[a] liberal application of any statute should be made so as to afford the citizens of this State or any political subdivision thereof an opportunity to vote for the persons of their choice." *MacCorkle v. Hechler,* 183 W.Va. 105, 106, 394 S.E.2d 89, 90 (1990), quoting *State ex rel. Lockhart v. Rogers*, 134 W.Va. 470, 477, 61 S.E.2d 258, 262 (1950).

The petitioners in this case argue that the circuit court, acting in this instance as an appellate court, exceeded its scope of review when it found that the respondents satisfied their burden of proving that the provisional voters were residents of Harpers Ferry and were duly registered to vote in the municipality on election day. The petitioners maintain that the circuit court erroneously substituted its own findings of fact for those of

the Tribunal to find that the provisional votes should have been counted. Upon review, we find that the circuit court did not err in concluding that the Tribunal's findings were manifestly wrong and against the clear weight of the evidence presented during the election contest trial.

With respect to the residency requirement,[13] the petitioners argue that the evidence presented at the election contest trial was insufficient to establish that the provisional voters were residents of Harpers Ferry. Specifically, the petitioners contend that because Ms. Howell never appeared to testify at the election contest trial, there was no evidence that she resided in Harpers Ferry on the date of the election. Although Ms. Howell was a candidate for the town council seats, the petitioners assert that there was no evidence presented that Ms. Howell was "certified" to be a candidate in the election and that even if such certification existed, it would not satisfy the legal requirement of residency to count her vote. The petitioners also claim that Ms. Howell intentionally withdrew her candidacy prior to the election, which further calls into question her alleged residency in Harpers Ferry.[14] Petitioners maintain that Ms. Painter's testimony that she "changed" Ms. Howell's

---

[13] *See* W.Va. Code § 3-1-3 (entitling citizens of West Virginia to vote in all elections held within precincts of counties and municipalities where they respectively reside); W.Va. Code § 3-2-5(c) (specifying information required on application to be duly registered to vote includes applicant's legal name, date of birth, and residential address), discussed *infra.*

[14] To support this claim, the petitioners submitted a copy of an email wherein Ms. Howell, responding to a request from the Town Clerk for a statement regarding why she was running for town council, replied, "I will not be running." Notably, the town council, which also served as the Board of Canvassers, certified fifteen votes in favor of Ms. Howell when it declared the results of the election.

9

registration to reflect that Ms. Howell resides in Harpers Ferry was insufficient to establish the residency requirement because Ms. Painter acknowledged that she had not personally spoken to Ms. Howell.

As for the other three provisional voters, the petitioners maintain that the evidence regarding their actual residency in Harpers Ferry was insufficient because there was no testimony from a DMV employee regarding the actual source or cause of the alleged voter registration errors. Petitioners point out that the only evidence regarding the alleged DMV error came through the testimony of Ms. Painter, who admittedly lacked personal knowledge of exactly how this alleged error occurred. Thus, the petitioners reason the Tribunal properly found that the residency requirement for the provisional voters was not established by competent evidence at the election contest trial.

Contrary to the petitioners' assertions, the record shows that Ms. Painter explained the exact nature of the error regarding the provisional voters' addresses when she testified during the election contest trial. Moreover, Ms. Painter provided detailed testimony as to how she investigated the matter and confirmed that the provisional voters were actual residents of Harpers Ferry and should have been included in the municipality's poll book. Explaining that Washington Street runs through both Harpers Ferry and Bolivar, Ms. Painter testified, "We wanted to find out where the street numbers stopped for Harpers Ferry and where they began for Bolivar." Ms. Painter stated that she consulted maps of Harpers Ferry and contacted the Jefferson County GIS/Addressing Office, which assigns

10

addresses for the county's 911 system.  Ms. Painter testified that she verified which street numbers fall within each municipality and that the street address numbers of the four provisional voters were within the boundaries of Harpers Ferry.  Characterizing the error as an "oversight," Ms. Painter explained that she had simply looked at the street name, instead of the house number, and had erroneously listed the voters in the Bolivar poll book based on the "West" designation.  Ms. Painter further testified that once she determined the provisional voters' residences were within the corporate bounds of Harpers Ferry, she corrected the poll books.[15]

Having reviewed the testimony presented at the election contest trial, we are unable to find that the circuit court erred when it concluded that

> [t]he evidence presented by Ms. Painter was clear and undisputed that Voter G. McCarty, Voter L. McCarty, Voter Howell and Voter Hutton were each duly registered voters in the State of West Virginia.  It was clearly against the weight of the evidence and manifestly wrong for the Tribunal to have listened to the undisputed testimony of the Chief Deputy Clerk of Elections and not to have reached this conclusion.
>
> The Tribunal mistakenly focused on a need to hear from a DMV representative as to the cause of having included the word "West" in these voters' addresses.  The Tribunal ignored the totality of the circumstances, that all four voters registered to vote while at the DMV and all [sic] three of the four testified that the DMV added the word "West" to their address.  There was no evidence presented to contradict the testimony of Ms. Painter or the three voters who testified.

---

[15] Ms. Painter testified that she did not have to correct the poll books for the McCartys because after they were required to cast provisional ballots, they went to the DMV and were able to have their address corrected before she completed her investigation.

We reject the petitioners' contention that the provisional voters were not duly registered to vote simply because their names were not in the Harpers Ferry poll book on election day. To support this argument, the petitioners rely upon *Galloway v. Common Council of the City of Kenova*, 133 W.Va. 446, 57 S.E.2d 881 (1949), which held:

> When the permanent registration system created by statute has been adopted by a municipality for an election of municipal officers, ballots cast in such election by voters whose names did not appear upon the permanent registration records procured from the municipal precinct file in the office of the clerk of the county court, as provided by Section 13-a, Article 5, Chapter 44, Acts of the Legislature, 1941, Regular Session, are not valid and can not be counted.

*Id.* at 446, 57 S.E.2d 881, syl. pt. 2. The petitioners' reliance upon *Galloway* is misplaced. The voter registration system in West Virginia was significantly different in 1949 than it is today. At that time, there were two separate and distinct voter registration lists, one for the county and state elections and one for municipal elections. *Id.* at 449-50, 57 S.E.2d at 883. In *Galloway*, the voters were registered for the county and state elections but were not registered for the municipal election. It was the voters' failure to register in the municipality that caused their votes to not to be counted. *Id.* That is not what happened here. Moreover, we no longer have a dual voter registration system.

In 1994, the Legislature enacted West Virginia Code §§ 3-2-1 to -37, known as the "Permanent Voter Registration Law," to establish "a permanent voter registration system . . . uniform in its requirements throughout the state and all of its subdivisions." W.Va. Code § 3-2-1 (1994). Under this law, "[n]o voter so registered shall be required to

12

register again for any election while continuing to reside with the same county, unless the voter's registration is cancelled as provided in this article." *Id.* Following the passage of the Help America Vote Act of 2002, 42 U.S.C. § 15301, e*t seq.*, the Legislature mandated that the Secretary of State, as the chief election official of the state, "implement and maintain a single, official, statewide, centralized, interactive computer voter registration database of every legally registered voter[.]" W.Va. Code § 3-2-4a (2016). This database is now "the official voter registration list for conducting all elections in the state." *Id.* The database contains "the name, registration information and voter history of every legally registered voter in the state." *Id*. The clerk of the county commission in each county and any authorized designee of a county clerk has "immediate electronic access to the information contained in the statewide voter registration database." *Id.*

Article IV, § 1 of the West Virginia Constitution provides that "the citizens of the state shall be entitled to vote at all elections held within the counties in which they respectively reside[.]" In addition, West Virginia Code § 3-1-3 (2013) provides that "[c]itizens of the state shall be entitled to vote at all elections held within the precincts of the counties and municipalities in which they respectively reside. But no person who has not been registered as a voter as required by the law . . . shall be permitted to vote[.]" To be duly registered to vote under the Permanent Voter Registration Law, an applicant must complete an application and, under oath, provide the following information:

> (1) The applicant's legal name, including the first name, middle or premarital name, if any, and last name;
> (2) The month, day, and year of the applicant's birth;

13

(3) The applicant's residence address including the number and street or route and city and county of residence:

(A) In the case of a person eligible to register under the provisions of 42 U. S. C. § 1973ff, et seq., the Uniformed and Overseas Citizens Absentee Voting Act, the address at which he or she last resided before leaving the United States or entering the uniformed services, or if a dependent child of such a person, the address at which his or her parent last resided;

(B) In the case of a homeless person having no fixed residence address who nevertheless resides and remains regularly within the county, the address of a shelter, assistance center or family member with whom he or she has regular contact or other specific location approved by the clerk of the county commission for the purposes of establishing a voting residence; or

(C) In the case of a participant in the Address Confidentiality Program administered by the Secretary of State in accordance with section one hundred three, article twenty-eight (a), chapter forty-eight of this code, the designated address assigned to the participant by the Secretary of State; and

(4) The applicant's signature, under penalty of perjury as provided in section thirty-six of this article, to the attestation of eligibility to register to vote and to the truth of the information given. The clerk may accept the electronically transmitted signature kept on file with another approved state database for an applicant who applies to register to vote using an approved electronic voter registration system in accordance with procedures promulgated by the Secretary of State.

W.Va. Code § 3-2-5(c) (2013).[16]

If a voter's eligibility or registration to vote is called into question on the date of an election, our statutory law allows the voter to cast a "provisional" or "challenged"

---

[16] Effective June 1, 2020, this statute was amended, but this subsection was not changed.

14

ballot. W.Va. Code § 3-2-1. The statute further provides that "such 'provisional' or 'challenged' ballot may be counted only if a positive determination of the voter's eligibility and proper registration can be ascertained." *Id.* In this case, the provisional voters' registrations were called into question on election day because their names were not in the Harpers Ferry poll book. However, the evidence presented during the election contest trial established that these four voters were duly registered to vote and were in fact residents of Harpers Ferry; their names were not listed in the Harpers Ferry poll book simply because of an erroneous designation in their residential addresses. With respect to provisional ballots, West Virginia Code § 3-1-41(e) (2016) clearly provides that "technical errors, omissions, or oversights" shall be "disregarded" and the votes "shall be counted" if "it can be reasonably ascertained that the challenged voter was entitled to vote." Here, the evidence showed that the provisional voters were all duly registered voters who resided in Harpers Ferry on the date of the election. The provisional voters timely registered to vote through the DMV and Ms. Painter explained how the "West" designation in their addresses caused the provisional voters names to be placed in the wrong poll book. Ms. Painter testified that she corrected the error as soon as it was brought to her attention. Contrary to petitioners' assertions,[17] the provisional voters were completely unaware of the error until they attempted to cast their votes on election day. Because the evidence established that

---

[17] The petitioners argue in their brief that the provisional voters were aware that their addresses were wrong and suggest that they had a duty to correct the error prior to election day. Upon review of the record, we were unable to find evidence to support this contention.

15

all the provisional voters were duly registered voters who resided at addresses falling within the boundaries of Harpers Ferry, the circuit court properly found that the Tribunal erred by ruling that their votes should not be counted.

We now turn to the cross-assignment of error concerning respondent Case's "standing" to participate in the election contest. "Standing" is defined as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Findley v. State Farm Mut. Auto Ins. Co.,* 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002) (quotations and citation omitted). Both the Tribunal and the circuit court found that Ms. Case did not have standing to participate in the election contest because she failed to post the bond required for the recount of the votes.

As set forth above, the record indicates that respondents McGee and Case separately requested a recount of the votes after the election but only respondent McGee paid the bond set by the Board of Canvassers.[18] West Virginia Code § 3-6-9(h) (2009) provides:

---

[18] The "Order Declaring Election Results" entered by the Tribunal contains conflicting findings of fact regarding whether respondent Case requested a recount. In that regard, the Tribunal made a finding that the respondents presented "no evidence that Nancy Singleton Case provided any written request for a recount within 48 hours of the declaration of election." However, the Tribunal also made a finding that "[t]he Board [of Canvassers] met . . . on June 19, 2019 to certify the election results. At this meeting, Recorder Kevin Carden asserted that two losing candidates had made a recount request." Noting the conflicting findings, the circuit court concluded that respondent Case's email

16

> Every candidate who demands a recount shall be required to furnish bond in a reasonable amount with good sufficient surety to guarantee payment of the costs and the expenses of the recount in the event the result of the election is not changed by the recount; but the amount of the bond shall in no case exceed three hundred dollars.

The respondents contend that the bond requirement was satisfied when respondent McGee posted the bond for the recount because West Virginia Code § 3-6-9(f) provides that "there shall be only one recount in each precinct, regardless of the number of requests for a recount of any precinct." In other words, they maintain that only one bond was required because there could only be one recount of the votes.

Conversely, the petitioners argue that every candidate who seeks to participate in an election contest must request a recount of the votes and post the required bond. They contend that the right to vie for votes in an election contest is strictly circumscribed by statute and is an individual right. Therefore, they reason that respondent Case did not have standing to participate in the election contest because she did not adhere to the mandatory requirements for requesting a recount, which includes the posting of the bond. To support their argument, the petitioner rely upon *Miller v. County Comm'n of Boone County*, 208 W.Va. 263, 539 S.E.2d 770 (2000).

---

satisfied the requirement of a written request for a recount but that she failed to post the required bond.

In *Miller*, Roger L. Weaver, a candidate for the Democratic nomination for the Assessor of Boone County, appealed a circuit court order which granted a writ of prohibition that precluded the county commission from hearing his protest of the results of the primary election. The circuit court found that Mr. Weaver's failure to file a request to recount the votes prevented him from contesting the election results. *Id.* at 266, 539 S.E.2d at 773. Prior to *Miller*, this Court had not considered whether a candidate must demand a recount as a prerequisite to filing an election contest, but had long recognized that "[a] contest and a recount . . . are very distinct procedures under our election laws." *State ex rel. Booth v. Bd. of Ballot Comm'rs of Mingo Cty.*, 156 W.Va. 657, 672, 196 S.E.2d 299, 309 (1972). Indeed, "[t]he statutory law contemplates that an election recount and contest shall be separate proceedings. The former must terminate and the result be declared before the latter may commence." Syl. Pt. 2, in part, *Reynolds v. Bd. of Canvassers of Harrison Cty.*, 117 W.Va. 770, 188 S.E. 229 (1936).

After examining the pertinent statutes governing the procedure for recounting votes and contesting election results,[19] this Court determined that

> [w]here a candidate seeks to contest specific ballots cast in an election pursuant to the provisions of West Virginia Code § 3-7-6 (1999), he must first demand that the Board of Canvassers conduct a recount of the ballots pursuant to the provisions of West Virginia Code § 3-6-9 (1999). Where, however, a candidate seeks to contest only such matters as fraud, an elected candidate's eligibility, or the legality of the election, the candidate may proceed directly with an election

---

[19] *See* W.Va. Code § 3-6-9; W.Va. Code § 3-7-6.

18

contest pursuant to the provisions of West Virginia Code § 3-7-6, thereby omitting the recount procedure set forth in West Virginia Code § 3-6-9, provided that any recount proceeding which was otherwise initiated has terminated.

*Miller,* 208 W.Va. at 264-65, 539 S.E.2d at 771-72; syl. pt. 5.

In finding that a recount is required when specific ballots cast during an election are being contested, this Court explained:

We have also previously recognized that the limited function of an election recount to decide matters which can be resolved intrinsically from the plain face of the actual ballot serves to "lay the basis for a[n] [election] contest[,]" because there are "many irregularities and illegalities discoverable in the course of a recount that cannot be corrected in that proceeding." *Brawley v. County Court*, 117 W.Va. 691, 694, 187 S.E. 417, 418 (1936). Another important facet of a recount is that it places all candidates who filed for the office in which the recount has been demanded on notice that problems may exist with specific votes cast in the election. *See* W. Va. Code § 3-6-9(a). Thus, where a candidate is disputing certain votes or ballots cast in an election, a recount gives all interested candidates in that particular race an opportunity: 1) to observe the manner in which the Board of Canvassers conducts the recount; 2) "to notify the board, in writing, of their intention to preserve their right to demand a recount of precincts not requested to be recounted by the candidate originally requesting a recount of ballots cast[;]" and 3) to identify votes cast which may be challenged as irregular or illegal in an election contest. *See* W. Va. Code § 3-6-9(b).

Inherent in the recount procedure is the concept of fairness to all interested candidates in an election. The recount procedure is the only mechanism available in an election dispute which gives the interested candidates a chance to identify and define problematic votes, thereby establishing the parameters for an election contest. The elimination of this procedure where specific votes are in dispute would necessarily result in a lopsided and unfair playing field upon

19

> which to base an election contest. It is, therefore, evident that where the challenge to election results stems from specific votes cast, a recount plays an integral and indispensable role tantamount to fundamental principles of due process, which cannot be ignored or omitted. To allow a candidate in such a case to bypass the recount procedure and proceed directly to an election contest would thwart the legislative purpose of the recount statute and essentially render such statute irrelevant. *See* W. Va. Code § 3–6–9 and § 3–7–6.

*Miller*, 208 W.Va. at 269, 539 S.E.2d at 776.

Unlike *Miller*, where the contester failed to timely request a recount before attempting to contest the election results, in this case, there was a recount of the votes pursuant to the timely request and payment of the bond by respondent McGee. Critically, the legislative purpose of the recount was not impeded. The "problematic votes," *i.e.,* the provisional ballots, were identified and the parameters of the election contest were established as a result of respondent McGee's request for a recount. Accordingly, the requirements of *Miller* were satisfied. Given that West Virginia Code § 3-6-9(f) only authorizes one recount in each precinct; that respondents Case and McGee were candidates in the same town council election; and that the bond, which covers the cost of the recount, was paid by respondent McGee, we find the circuit court erred by affirming the Tribunal's finding that respondent Case lacked standing to participate in the election contest. Because of the unique circumstances presented in this case and the fact that the legislative purpose of the recount statute was achieved, we reverse the final order of the circuit court insofar

20

as it finds that respondent Case does not have standing to participate in the election contest of the 2019 Harpers Ferry town council election.[20]

Finally, we consider the respondents' cross-assignment of error concerning the refusal of council members Johnson and Thompson, who are also petitioners in this case, to disqualify themselves from participating in the election contest trial as members of the Tribunal. The respondents contend these council members obviously should not have judged their own election contest and that the circuit court should have ruled that they were disqualified. As noted above, the circuit court declined to address this matter having reached the merits of the case and concluded that the provisional ballots should have been counted. While the issue is technically moot given our decision to affirm the circuit court's determination that the provisional ballots should be counted, we are compelled to address the matter because the issue is clearly capable of repetition and involves a vital public function—declaring the results of an election. *See* Syl. Pt. 1, *Israel by Israel v. W. Va. Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989) (setting forth factors courts consider in deciding to address technically moot issues).

---

[20] We note that our decision today should not be construed to mean that a candidate for an elected office can participate in the recount process without paying the required bond as that was not the issue presented in this case. Having failed to pay such bond at the initiation of the recount, respondent Case would not have been authorized to determine which precinct(s) were to be reviewed, nor would she have been able to stop the recount or require it to proceed further if respondent McGee decided to stop it. However, as discussed above, the recount process is a separate proceeding from an election contest. Our decision today is based on the narrow set of facts presented and concerns only the right of respondent Case to participate in the election contest.

21

The respondents assert that the participation of council members Johnson and Thompson as members of the Tribunal "ran afoul of common sense, logic, statutory law, and the West Virginia Ethics Code governing elected officials." We agree. It is axiomatic that "a judge should disqualify himself or herself from any proceeding in which his or her impartiality might reasonably be questioned." *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 108, 459 S.E.2d 374, 385 (1995). With regard to judging election contests, West Virginia § 3-7-6 provides:

> In all cases of contested elections, the county commission shall be the judge of the election, qualifications and returns of their own members and of all county and district officers: Provided, That *a member of the county commission whose election is being contested may not participate in judging the election, qualifications and returns.*

(Emphasis supplied). This provision applies equally to municipal elections as the statute expressly states: "The provisions of this section apply to all elections, including municipal elections, except that the governing body of the municipality is the judge of any contest of a municipal election." *Id.*

In this case, the respondents were clearly contesting the election of council members Johnson and Thompson. The certified election results indicated that respondents Case and McGee lost by two and three votes, respectively. There were four provisional ballots at issue. As such, council members Johnson and Thompson and Christian Pechuekonis, the other newly elected council member who received votes within the

22

margin of error, were subject to losing their seats on the town council depending upon the outcome of the election contest. Mr. Pechuekonis voluntarily disqualified himself from the Tribunal and did not participate. Council members Johnson and Thompson refused to disqualify themselves, maintaining that the rule of necessity required them to participate as members of the Tribunal even though their election to the town council was being contested.

"The rule of necessity is an exception to the disqualification of a judge. It allows a judge who is otherwise disqualified to handle the case to preside if there is no provision that allows another judge to hear the matter." Syl. Pt. 7, *State ex rel. Brown v. Dietrick*, 191 W.Va. 169, 444 S.E.2d 47 (1994). The petitioners argue that all council members who were named as contestees were disqualified in this matter and a quorum to judge the election contest did not exist. Therefore, they reason that the rule of necessity required their participation as members of the Tribunal. However, the petitioners have overlooked the fact that council member Jay Premack was not impacted by the election contest because he won his seat on the town council with 87 votes. Likewise, council member Humes was elected with 91 votes and was not at risk of losing her seat as a result of the election contest. With the addition of the other two members of the Tribunal who were not candidates in the town council election, there was a quorum of four persons on the Tribunal to decide the election contest absent council members Johnson and Thompson's participation.

23

This Court has explained that "the rule of necessity is an exception to the general rule precluding a disqualified judge from hearing a matter. Therefore, it is strictly construed and applied only when there is no other person having jurisdiction to handle the matter that can be brought in to hear it." *Id.* at 171, 444 S.E.2d at 49; syl. pt. 8. While the rule of necessity required the participation of council members Premack and Humes to provide a quorum to judge the election contest, it did not require the participation of council members Johnson and Thompson. The Ethics Commission so advised when it responded to council member Jay Premack's request for an opinion on the matter. The Ethics Commission opined:

> It is the general opinion of Ethics Commission staff that [if] there is a reasonable probability that the tribunal's decision on the election contest could impact whether a council member, who is also a member of the tribunal, may keep his or her City Council seat, then that council member may not participate as a member of the tribunal because he or she has financial interest in holding the elected position in question.

In sum, council members Johnson and Thompson should not have participated in the election contest trial as members of the Tribunal. The rule of necessity did not require their participation because there were members of the town council who were not impacted by the election contest available to serve on the Tribunal.

## IV. Conclusion

For the reasons set forth above, we affirm the circuit court's order to the extent that it concludes that the four provisional ballots cast by Linda McCarty, George McCarty, Leah Howell, and Adam Hutton in the 2019 Harpers Ferry municipal election

24

should be counted.  We reverse the circuit court's order insofar as it affirms the Tribunal's decision that Nancy Singleton Case lacked standing to participate in the election contest. This case is remanded to the circuit court for entry of a new order consistent with this opinion.

Affirmed, in part, Reversed, in part, and Remanded with directions.